LANDIS *vs.* THE STATE OF GEORGIA.

[This case was brought forward from the last term, under §4271(a) *et seq.* of the Code.]

Ordinarily the defendant in a criminal case is entitled to have the entire case left to the jury, upon the evidence introduced by both sides, and if, upon a consideration of all the evidence, every reasonable doubt be not removed, he should be acquitted. If the defendant submits proof insufficient to establish an *alibi*, as such, still the proof submitted may be considered by the jury in connection with the other evidence, in deciding whether a reasonable

v 70–42

doubt as to the guilt of the accused has been raised. It was, therefore, error to charge that, if the evidence was sufficient to warrant a conviction, irrespective of the question of *alibi*, and if the defendant sought to set up an *alibi*, the evidence to support such defence should be so strong as to convince the jurors' minds beyond a reasonable doubt of the truth of the *alibi*.

February 20, 1883.

Criminal Law.     *Alibi*.     Before Judge CLARK.     City Court of Atlanta.     March Term, 1882.

Landis was tried in the city court of Atlanta on an accusation charging him with malicious mischief. One ground of his defence rested upon an *alibi*. He was found guilty, moved for a new trial, which was refused, and he excepted. For the other facts, see the decision.

JOHN D. CUNNINGHAM; HENRY H. TUCKER, JR., for plaintiff in error.

W. D. ELLIS, solicitor of city court, for the state.

HALL, Justice.

The only assignment of error made by this record that we deem it necessary to notice, is that made upon the judge's charge on the effect of the evidence had in the case upon the subject of the defendant's proof of an *alibi*.

The able and experienced judge who tried the case charged the jury that, "if the evidence, irrespective of the *alibi*, convinced their minds, beyond a reasonable doubt, of the commission of the offence set forth in the accusation, and of the identity of the defendant as the person who committed it, and if they believed from the evidence that the defendant was guilty, under the law as given them in charge, and would so find him if there was no evidence of the *alibi*, then that evidence should be so strong as to convince their minds, beyond a reasonable doubt, of the truth of the *alibi* ; that, to acquit on the ground of *alibi*,

the evidence of that fact should have the same degree of certainty as is required to convict on the part of the state; it should, on such a defence, outweigh the evidence of the state, and show that the commission of the offence by the defendant at the time it was alleged to have been committed, if committed at all, was an impossibility."

The jury was recalled, at the request of defendant's counsel, as they were leaving the court-room, and in response to a question propounded by them to the court, if it was intended that the jury were to understand, "that the facts going to establish the *alibi* relied upon by the defendant must be proved beyond a reasonable doubt, before it could be available as a defence." The judge, addressing himself to the jury, replied: "Yes, the facts to sustain the *alibi* must be proved beyond a reasonable doubt," that is to say, "with the same degree of certainty that the state is required to make out its case."

It is due to our learned brother, who delivered this charge, that the reasons which led him to the conclusion he reached should be set forth in his own language. He says, in a note at the close of the writ of error, that he ' was surprised to learn, from his own investigation and that of counsel on both sides, how little law there is in the books, especially the old books, on the subject of *alibi*. Hence, he came to the conclusion that the rule should vary according to the evidence on both sides, and that which was laid down should be the one that ought to prevail in this case, which presented a good opportunity to obtain from the Supreme Court a definite ruling as to the effect of an *alibi* when, but for it, the jury would have to believe defendant guilty beyond a reasonable doubt, and in some cases beyond any doubt; that an *alibi* is the common resort of defendants in desperate cases, is the most usual mode of manufactured defences, and therefore, in his judgment, public justice, in cases where the defendant's guilt, but for the *alibi*, is certain, requires a stringent rule; for, if injustice should be done by a jury to the de-

fendant, he would generally be safe in the hands of the court, on a motion for a new trial, and guilty men should not be allowed to escape in the mere smoke of an *alibi*, even though it is a dense smoke, it is smoke at last, however dense.'

Whether these considerations would be entitled to weight, if addressed to the law-making power, we do not propose to determine; for what authority has this or any other court to make law? It is our province to interpret the law. "*Judex est custos, non conditor, juris; judicia exercere potuit, facere leges non potest,*" is the terse, brief and comprehensive summary of the civil law, as to the powers and prerogatives of a judge incorporated in our law, and fortified by that provision of the state constitution which keeps separate the departments of the government, and inhibits either one of them from doing acts or exercising powers pertaining to either of the others, unless expressly authorized so to do. When, therefore, a judge goes beyond this, he transcends the limits to which he is confined, and usurps the powers of the legislator.

Rules are uniform and certain; but if they are to vary and fluctuate with every change and degree of change in the ever shifting circumstances of each case as it arises, they lose their certainty and uniformity, and cease to be rules. In trials for crimes, these rules are to be strictly construed as against the state, in favor of the life and liberty of the citizen. The law presumes every man innocent until his guilt is established by competent and sufficient testimony. While the attainment of moral and reasonable certainty is all that can be expected in legal investigations, and in civil cases a preponderance of testimony is deemed sufficient to produce mental conviction, yet in criminal cases, a greater strength of mental conviction is held necessary to justify a verdict of guilty. Code, §3749. The doubt which the law recognizes inures to the benefit of the accused, not of the state, and whatever casts this doubt upon guilt is proper for the consideration of the jury, and should influence their finding; but here they

are instructed that they are not at liberty to use testimony introduced to establish an *alibi*, unless it is so conclusive as to exclude this doubt of the fact set up in defence; that the defendant, in order to make it available, must sustain it by the same amount of testimony that the state is required to show in order to fix guilt, and that it must be of the same conclusive nature and tendency.

We have met with some dicta to the effect that if this defence turns out to be untrue, it amounts to a conviction. Wills Cir. Ev., 92; citing what fell from Justice Daly in Rex *vs.* Killan, 20 St. Tr., 1085. "But," says Mr. Wills, "it must not be overlooked, that such is the weakness of human nature, there have been cases where innocence, under the alarm of menacing appearances, has fatally committed itself by the simulation of facts, for the purpose of evading the force of apparent suspicion. When the defence of an *alibi* fails, it is generally on the ground that the witnesses are disbelieved, and the story considered to be a fabrication; and from the facility with which it may be fabricated, it is commonly entertained with suspicion, and sometimes, perhaps, unjustly so." And he cites the case of Rex *vs.* Robinson, which, with other cases, will be found in his book, on pages 113, 114, 115, which were all cases of mistaken identity, and left it really doubtful whether the parties accused were the perpetrators of the offence. Upon these questions of identity and the presence of the accused at the scene of the crime, there was so much contradictory evidence, that Baron Bollard, who tried one of them, and who, it seems, had experience as a prosecuting officer as well as a judge, said: "These contradictions make one tremble at the consequences of relying on evidence of this nature, unsupported by other proof," and the remark was well warranted by the case he gave. "When at the bar," he said, "he had prosecuted a woman for child-stealing, tracing her by eleven witnesses, buying ribbons and other articles at various places in London, and at last into a coach at Bishopsgate, whose evidence was con-

tradicted by a host of other witnesses, and she was acquitted; and that he afterwards prosecuted the very woman who really stole the child, and traced her by thirteen witnesses." There is scarcely a case, where this defence is relied upon, in which a question of identity is not involved.

"It must be admitted," says Sir Michael Foster in his Crown Law, 368, "that mere *alibi* evidence lieth under a great and general prejudice, and ought to be heard with uncommon caution; but if it appeareth to be founded in truth, it is the best negative evidence that can be offered; it is really positive evidence, which, in the nature of things, necessarily implieth a negative; and in many cases it is the only evidence that an innocent man can offer."

After treating of the effect of this and other exculpatory evidence, Mr. Wills, Cir. Ev., 172,* comes to the conclusion that, " as inculpatory facts are infinitely diversified, exculpatory facts must admit of the same extent of variety, and that they may be of every degree of force. In all such cases of conflicting presumptions, it is the duty of the jury, with the assistance of the court, to weigh and estimate the force of each several circumstance of presumption, and to act upon what appear to be the superior probabilities of the case; and if there be not a decided preponderance of evidence to establish the guilt of the party, to take the safe and just course, by abstaining from pronouncing a verdict of guilt, where the necessary light and knowledge to justify them in so doing with the full assurance of moral certainty is unattainable."

In Briceland *vs.* The Commonwealth, the supreme court of Pennsylvania carefully considered this question (74 Penn. St. R. 469), and say: " Complaint is made of that portion of the charge relating to the defence of *alibi,* but without just ground. When a defence rests on proof of an *alibi,* it must cover the time when the offence is shown to have been committed, so as to preclude the possibility of the prisoner's presence at

* See side page 134.

the place of the murder. Although the prisoner makes no admission of guilt by setting up an *alibi*, yet clearly the value of the defence consists in showing that he was absent from the place where the deed was done, at the very time the evidence of the commonwealth tends to fix its commission upon him; for if it be possible that he could have been at both places, the proof of the *alibi* is valueless. The court treated the evidence of the prisoner's being in bed at Truax's as an *alibi* defence, which in truth it was ; and in this view, the portion of the charge complained of was correct. It is argued now that, though the prisoner's evidence of an *alibi* was not conclusive as to time, yet it tended to raise a doubt of his presence at the house of John Allingham. But the court said nothing to the contrary; and when charging on the *alibi* as a defence, said expressly that the prisoner's failure to prove it did not relieve the commonwealth from the duty of proving that he was the perpetrator of the crime. At the close of the charge, when speaking of the doubt which should avail the prisoner, the judge said : ' The prisoner's guilt must be made out by evidence sufficiently conclusive to exclude any reasonable supposition of innocence. Upon the whole case and every material part of it you are to give him the benefit of any reasonable doubt arising out of the evidence.' And again, ' allowing the prisoner the benefit of the presumption of innocence and of every rational doubt, you will give the evidence your calm, deliberate, and solemn consideration.' These were nearly the closing words of the charge, leaving the last and most vivid impression upon the minds of the jurors. The excellent judge who presided at the trial did the prisoner full justice."

" In an indictment for crime, the defendant, ordinarily, is entitled to have the whole case left to the jury, upon the evidence on both sides, and if, upon a consideration of all such evidence, every reasonable doubt be not removed, the jury should acquit. Therefore, in a case of larceny, an

instruction to the jury that the burden of proof to show the guilt of the prisoner is upon the state; but when the state has made out a *prima facie* case, and the prisoner attempts to set up an *alibi*, the burden of proof is shifted, and if the defence fail to establish the *alibi* to the satisfaction of the jury, they must find the prisoner guilty, is erroneous."

Exceptions to this general rule exist as to malice in cases of homicide, and also generally where the defendant relies upon some distinct ground of defence not necessarily connected with the transaction on which the indictment is founded, *e. g.*, insanity, etc. .64 N. C. R., 56. In Tennessee, the law has been laid down in substantially the same terms; there, where the charge was " that the proof necessary to establish the *alibi* must be as certain as that by which the state would have to establish the guilt of the accused," this was held to be erroneous, because its effect was to exclude the prisoner from the benefit of any reasonable doubt as to his guilt, arising from the proof touching the *alibi*, in connection with other proof in the cause; and further, that the prisoner was not bound to prove an *alibi* beyond a reasonable doubt. 7 Coldwell's R., 92. So in Mississippi, where to a charge of murder the defence was an *alibi*, it was held that, if the evidence in support of the *alibi* was sufficient to raise a reasonable doubt in the minds of the jury, the accused is entitled to an acquittal. And in this case, it was seriously questioned whether there was such a thing as an affirmative defence to a criminal charge which would, at any time during the trial, shift the burden of proof from the state to the accused; and it seems if there be, the accused is entitled to an acquittal, when he has raised in the minds of the jury a reasonable doubt as to such affirmative matter. 53 Miss. R., 410.

These cases might be greatly multiplied, but in addition to those already cited, the following will suffice to controvert successfully, the position taken in the charge now under review: 12 Ind., 670; 42 *Ib.*, 373; 50 *Ib.*, 190; 1 Nev., 543; 5 *Ib.*, 132.

" Evidence of an *alibi*," says the supreme court of Illinois (39 Ill. R., 457), " whether sufficient to render the guilt of the defendant impossible or only improbable, is proper for the jury, and he is entitled to any reasonable doubt they may entertain upon this point; and if he attempts to prove an *alibi*, and fails to do so, it should have no greater weight to convince them of his guilt than a failure to prove any other important item of defence, and should not, generally speaking, operate to his prejudice."

This, it strikes us, is a correct exposition of the law upon the subject, and accords with what was said, well and forcibly, by Bleckley, J., in delivering the opinion of the court in *Johnson vs. The State*, 59 *Ga.*, 142, 143 : " It could not have been the purpose of the court to say that the facts from which the impossibility of presence was to be inferred must be proved with any higher degree of certainty than is required to establish other like facts in a court of justice."    And again : " What degree of mental conviction should be deemed adequate to give the facts a lodgment in the minds of the jury, is not treated of in the part of the charge we are considering.    Doubtless that subject was properly dealt with in the general charge, under the head of reasonable doubt, or some other, which has not been brought up in the record."    *Ib.*, 144.    And also with what was more directly said by Speer, J., in the case of *Ware vs. The State*, 67 *Ga.*, 349: "We do not mean to say, if the *alibi* is failed to be established with the certainty the law requires, that the proof submitted on this point may not be considered by the jury in connection with the other evidence, so as to raise reasonable doubts as to the guilt of the accused.    And as there is no complaint that the court did not instruct the jury as to the law of reasonable doubts, we must presume this was done; and if so, then the defendant had the full benefit of the law, and we find no error that entitles him to a new trial on this ground of error."

These two cases, *ex abundanti cautela*, carefully guard

against an inference which the court foresaw might be erroneously drawn from rulings as to what points the evidence should cover in making out a complete defence, where an *alibi* was pleaded. While it is true that the cases did not necessarily make the question now under consideration, and these statements may be regarded as *obiter dicta*, still, they state the law, as we think, correctly, and as we now decide, when the point is distinctly presented, and our views are earnestly invoked.

Because a principle, just and proper in itself, and which has been deemed essential to the preservation of the rights and liberties of the citizen may be liable to abuse, and by its perversion and misapplication, and the facility with which evidence may be fabricated in its support, may enable guilty parties to escape merited punishment, under the dense smoke raised, we see no reason either for ignoring it, or making it more stringent in its application, than precedent or authority warrants. There is no sound policy in making decisions contrary to law, or beyond its scope. The law should never be strained to accomplish an object, however desirable it may be in particular instances. Such a precedent could only eventuate in wrong. Every man is entitled to his rights under the law. Such rights are never to be violated. This principle, remarks a very great judge, should be kept steadfast in every man's breast; but above all, it should find an asylum in the sanctuary of justice.

As there must be another hearing of this case, we refrain from expressing an opinion upon the other grounds of the motion for a new trial, and put our judgment only upon that which we have considered.

Judgment reversed.