SIMPSON *vs.* THE STATE OF GEORGIA.

1. The verdict is fully supported by the evidence.
2. All the tests laid down for determining the force and effect of evidence, together with the rules affecting the credibility of witnesses, such as relate to the various ways of impeaching and sustaining them, were in substantial compliance with the law as contained in the code, and were directly applicable to the proofs in the case.
   (*a*) It is well-settled that an accomplice is not, as a general rule, entitled to the full credit given to other witnesses, whether he be introduced by the State or by the defendant, without corroboration.
   (*b*) The relationship of witnesses to parties, their manner of testifying, and other circumstances of like character, may be taken into consideration by the jury in estimating the credit to be given to them.
   (*c*) Where the general character of a witness is put in issue, it is a proper mode of ascertaining the weight that should be attached to his testimony.
3. The court did not intimate an opinion in his charge as to the guilt of the accused, or as to what had or had not been proved, nor did he charge upon an assumed state of facts not shown by the proof.
4. The record contains not only direct but circumstantial evidence; not only positive but negative evidence; and the charges given on each of these subjects were clear, apt and explicit, and just such as the parties were entitled to have and as the circumstances of the case demanded.
5. The charge upon the proof of an *alibi* and its effect, in connection with other testimony, in creating a doubt that would inure to the benefit of the defendant, has been approved in several cases by this court, and did not lay down any unusual requirement as to the length to which it should go in order to establish that fact.

6. There was no error of which the defendant can complain in charging that, if facts proved admit of two inferences, the one favorable and the other unfavorable to the defendant, that most favorable to him should be adopted. Nor was there error in charging that doubtful inferences should yield to direct and positive proof on the point, if the evidence is credited by the jury.

(*a*) The verdict is right; and there was no material error, if any at all, in the several rulings and charges excepted to.

December 7, 1886.

Charge of Court. Witness. Criminal Law. Accomplice. *Alibi.* Before Judge FAIN. Gordon Superior Court. August Term, 1885.

Sam. Simpson and Dick Hall were indicted for burglary. Simpson was placed on his trial and pleaded not guilty. The evidence for the State showed, in brief, as follows: The store of Reeves & Malone, in the town of Calhoun, was broken open. An entrance was effected through a window, an attempt made to force open the cash-drawer, and certain goods carried to the window. The burglars were interrupted in their work and ran away. A witness (Allen) testified that he was with defendants at different times during the evening and night when the burglary occurred; that they were drinking; that he left them near midnight at a public well, not far from the scene of the crime; that he returned to the well for water not long afterwards; that he saw a man standing in the window and another proceeding to get in; that when he took hold of the well-rope, the man in the window climbed down, and he recognized Hall; that the other with Hall was Simpson; and that he went and informed the marshal of the town that something wrong was going on, and then went home. A short time afterwards, he heard shooting and a noise of persons passing by his house along the road going towards Simpson's, and he also fired his gun. He admitted that he had made certain statements to the sheriff and his deputy conflicting with his testimony, but said he thought it best to do so on account of the relationship of

one of those parties to Simpson. Another witness testified to seeing the defendants near the scene of the burglary shortly before its discovery. The town marshal testified that he saw Hall and Simpson several times on the night of the burglary ; that they were drinking and he advised them to go home; that when Allen came for him, he mentioned Hall's name, but not Simpson's, specifically ; that witness went to the store by a circuitous route so as not to be observed; that as he came to the corner of the building, he heard a noise inside of the house, and while he was standing near the window, Hall and Simpson came out and ran down the street; that it was a bright moonlit night, and he recognized them distinctly ; and that Simpson was in his shirt sleeves.

Veal and Harkins, witnesses for the defendant, testified that, on the Monday following the burglary (which was on Saturday night), the marshal stated that both of the persons who sprang from the window had on coats. Veal denied that that officer had said on Sunday morning that Simpson did not have on a coat, and stated that he did not remember having any conversation about coats, except on Monday morning. The marshal denied making the statements attributed to him, and said the conversation occurred on Sunday and he had stated that Hall had on a coat in the earlier part of the night; and if the witnesses understood him as stating what they testified, they were mistaken.

On behalf of the defendant, Hall testified that he was with him during the night, that they staid in town until eleven or twelve o'clock, and then went out to Simpson's house, a mile or two distant, and staid all night; that neither of them entered the store, and he knew nothing of the burglary until the next morning. Two other witnesses testified that they lived near the road leading to Simpson's house and some distance from Calhoun, and that persons passed along the road between twelve and one o'clock that night going towards Simpson's (the burglary was discov-

ered not far from one); that it would have taken some-time for them to have come from Calhoun to the point where they were seen and heard; and that from their voices, it was thought they were Hall and Simpson. A number of witnesses testified as to the good character of the defendant. The jury found him guilty, and he moved for a new trial on the following grounds:

(1) Because the court charged the jury as follows : "So, gentlemen, take this rule, and you can consider, as I stated awhile ago, the question as to whether or not a man is an accomplice. If he is a witness, it is for you to determine whether or not you give his testimony any weight, or what weight you give it. You can consider that fact as to whether or not a witness is an accomplice."

(2) Because the court charged as follows : "You can consider, again, the interest of witnesses. You can consider as to whether a witness is related or not."

(3) Because the court charged as follows : "There are three general points of impeachment, gentlemen. One is, by disproving the facts testified to by a witness. Another is, by proof of contradictory statements previously made by the witness as to matters relevant to his testimony in the case here. Another general ground is proof of general bad character. I will say nothing to you specially about that, but simply refer to the ground."

(4) Because the court charged as follows: "In this case, the court permitted, sustained by authorities (though the authorities differ somewhat on this question), some testimony to come in with reference to some conversations—a conversation between Neal and Dorsey. I do not propose to intimate any opinion as to the testimony of these witnesses. The court ruled out all the testimony as to what Mr. Dorsey said to other witnesses on other occasions. Where both witnesses were introduced and two conversations were referred to, one on Sunday, for instance, and one on Monday, between the same parties, Neal's attention being called to a conversation with Dorsey about the same

matter about the same time, say on Sunday morning, the court permitted all that to go in, and it goes to the recol- lection of Neal; the court permits it to go before you, if there is testimony of this sort about conversations on two days, and it goes to the recollection and credit of both witnesses. You determine what was said."

(5) Because the court charged as follows: "So, gentle- men, when you come to consider the testimony of the va- rious witnesses, you can take into consideration who they are, their relationship, their interest, their manner."

(6) Because the court charged as follows: "If an *alibi* is insisted upon on part of the defendant as a defence — that he was elsewhere and not at the place where the crime was committed at the time the crime was commit- ted,—if that is the defence insisted upon, then the court states this to you as the rule: An *alibi* means elsewhere; that he must be somewhere else, other than the place where the crime was committed at the time the crime was committed. The language of our Supreme Court, I be- lieve, is about this: To make an *alibi* available as a de- fence within itself, it must be so strong as to preclude the idea of the party's being at the place where the crime was committed at the time the crime was committed."

(7) Because the court charged as follows: "While I have charged you this in reference to inferences, that the one fa- vorable to the defendant should be adopted, I also charge you that all inferences must and ought to yield to direct ev- idence when it exist in a reliable form, if you so find it. Direct evidence is that which points directly to the ques- tion at issue, to fact; circumstantial evidence, if you look into the circumstances, is that which only tends to estab- lish the issue by proof of various facts sustaining, by their consistency, the hypothesis claimed."

(8) Because the court charged as follows: "There is positive and negative evidence. Positive evidence is that which points directly to the question at issue. I might say it exists because it comes to the mind; I might say

through the same one of the senses, I saw it, I felt it, I heard it. Negative evidence is part of the opposite; I was about there, but I didn't see it, did not feel it, didn't hear it. And the general rule is, nothing else appearing, positive evidence preponderates over negative evidence; the general rule is, you may believe the testimony of one witness swearing positively over the testimony of many witnesses swearing negatively."

(9) Because the court charged as follows : " Go to the testimony and see how this is. The question of identity may be necessary to be considered by you. Are these the parties ; was Simpson one of the parties who entered this house ? Take hold of the real question at issue."

(10) Because the court charged as follows: " If two parties are engaged in one common enterprise, and that enterprise is the breaking and entering into the house of another with intent to steal, they would both be guilty of burglary ; that is, if the breaking and entering into took place, and the intention to commit a larceny existed. If one did the breaking and entering into and the other did not even enter, or if he did enter and did nothing else more than to conceal and watch and advise, that would constitute him as much the principal as the other ; he would be equally guilty in law. If he was even in the immediate proximity and was there on watch (the court only speaks hypothetically), that would be such assistance as would constitute and make him one of the principals in the burglary."

(11) Because the verdict was contrary to evidence.

The motion was overruled, and the defendant excepted.

W. C. GLENN ; O. N. STARR, for plaintiff in error.

J. W. HARRIS, JR., solicitor-general, by ROBT. B. TRIPPE ·
E. J. KIKER, for the State.

HALL, Justice.

1. The verdict is fully supported by the evidence, and so far from being contrary thereto, it is in accordance with its decided preponderance.

2. All the tests laid down for determining the force and effect of evidence, together with the rules affecting the credibility of witnesses, as, such as relate to the various ways of impeaching and sustaining them, were in substantial compliance with the law as contained in the code, and were directly applicable to the proofs in the case. That an accomplice is not, as a general rule, entitled to the full credit given to other witnesses, whether he be introduced by the State or the defendant, without corroboration, seems to be well-settled; that the relationship of witnesses to parties may be taken into consideration by the jury in estimating the credit to be given to them, as well as their manner of testifying, etc., and other circumstances of like character, is equally well-settled. The general character of a witness, where that character is put in issue, is likewise a proper mode of ascertaining the weight that should be attached to his testimony. These rules are so familiar and so universally recognized, that it would be a mere waste of time to cite authorities in their support.

3. A careful examination of this voluminous record, and the full and fair charge of the court, covering every possible phase of this case, fails to disclose a single instance in which the judge intimated an opinion either as to the guilt of the accused, or as to what had or had not been proved, or one in which instructions were given on assumed facts which were not in proof.

4. The record contains not only direct but circumstantial evidence, not only positive but negative evidence; and the charges given on each of these subjects, were clear, apt and explicit, and just such as the parties were entitled to have and as the circumstances of the case demanded.

v 78-7

5. The charge upon the proof of an *alibi*, and its effect in connection with other testimony, in creating a doubt that would inure to the benefit of the defendant, has been approved in several cases by this court, and did not, in our opinion, lay down any unusual requirement as to the length to which it should go in order to establish that fact. In *Landis's* case, 70 *Ga.* 651, we examined this question in all its bearings and announced the principles substantially embodied in this charge.

6. What objection the defendant can make to a charge that, if facts proved admit of two inferences, the one favorable and the other unfavorable to the defendant, that which is most favorable to him should be adopted, we are unable to divine; or what error there is in charging that doubtful influences should yield to direct and positive proof upon the point, if the evidence is credited by the jury, we are equally at a loss to understand. There is nothing else requiring notice in the various grounds of this motion than what has already been disposed of. The verdict was right; and no material error, if any at all, in the several rulings and charges of the court excepted to having been pointed out and made plainly to appear, it follows that the motion should have been overruled and another trial refused, especially as it does not seem it would or could probably result differently from that already had.

Judgment affirmed.