## SHIELDS v. UNITED STATES.

(Circuit Court of Appeals, Third Circuit. January 11, 1927. Rehearing Denied February 14, 1927.)

No. 3512.

1. Criminal law ⟨⟩785(12)—Court properly instructed jury to scrutinize testimony, both as to defendant's and government witnesses, who had confessed to crime.

Where witnesses had confessed to violation of prohibition law, with which defendant was charged, two of whom testified for government and one for defendant, court properly instructed jury that testimony of all three witnesses shall be carefully scrutinized.

2. Criminal law ⟨⟩508(1)—Government may use testimony of witnesses who confessed same crime for which defendant was tried.

Government had right to use testimony of witnesses, who had confessed to crime for which defendant was being tried, and thereafter voluntarily went on stand to testify against defendant.

3. Criminal law ⟨⟩1129(1)—Circuit Court of Appeals may consider plain error, though not assigned (Circuit Court of Appeals rule 11).

Under Circuit Court of Appeals rule 11, Circuit Court of Appeals may consider plain error, although it was not assigned.

4. Criminal law ⟨⟩1137(8)—Error cannot be alleged because court required jury to be held in deliberation until verdict was returned in accordance with defendant's request.

Where defendant's counsel had requested court to hold jury in deliberation until verdict was agreed on, error thereafter cannot be alleged because of court's requiring jury to return verdict by additional instructions in writing, at time counsel was not in attendance when such action was taken.

5. Criminal law ⟨⟩1137(2)—Defendant cannot complain of error invited by himself.

Defendant in criminal case cannot complain of error which he himself has invited.

In Error to the District Court of the United States for the Western District of Pennsylvania; Frederic P. Schoonmaker, Judge.

Daniel J. Shields was convicted for violation of the National Prohibition Act, and he brings error. Affirmed.

Percy Allen Rose, of Johnstown, Pa., and Max V. Schoonmaker, of Pittsburgh, Pa., for plaintiff in error.

John D. Meyer, U. S. Atty., and Joseph A. Richardson, Asst. U. S. Atty., both of Pittsburgh, Pa.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge. In the court below, Daniel J. Shields, Milan Dicklick, Julius Rothstein, William Holzmann, and a number of other persons were jointly indicted for violation of the National Prohibition Act (Comp. St. § 10138¼ et seq.). Before the trial, Dicklick pleaded nolo contendere and was sentenced. See Hudson v. United States (C. C. A.) 9 F.(2d) 825; Id., 47 S. Ct. 127, 71 L. Ed. ——. Subsequently Rothstein, Holzmann, Shields, and sundry other defendants went to trial, and, confining our attention to his case, Shields was found guilty, was sentenced, and thereafter sued out this writ of error.

[1] After due consideration we now hold, for the reasons we now state, that no error was committed, and therefore that the judgment of the court below be affirmed as to him. The alleged errors arise in this way:

At the trial Shields himself went on the stand and testified in his own behalf. He called as a witness in his behalf Dicklick, who had theretofore pleaded nolo contendere to the same joint offense with which Shields was being tried, and the government called in its behalf Rothstein and Holzmann, who stood in the same general situation as Dicklick; that is, they also had admitted their guilty participation in the same joint offense with which Shields was being tried. In charging the jury, the trial judge, in outlining the connection of Rothstein and Holzmann with the offense charged against Shields, said:

"The government called the defendant Rothstein, who told about Daniel Shields selling the brewery, and what occurred at the meeting at the office in the Capital Building, when Schuller, Simler, Widman, and Gastman were present, where it was agreed that there should be paid $50,000, and $25,000 was paid. And Rothstein testified further to the agreement after Shields insisted upon $13 a barrel for protection; he said that that conversation, as we recall it, occurred in a room adjoining the one in which the other parties were. And Holzmann corroborates this same

thing. Rothstein testified, as the result of that, he paid to Shields the sum of $80,521 as protection money."

As to Dicklick's connection the judge said:

"Milan Dicklick was called to the witness stand and told us of his connection with this enterprise, and he said that no $13 arrangement was made; that they agreed to buy the brewery for $50,000, that they met at this office, that $25,000 was paid in currency at that time, and, as we recall it, he said that Simler furnished the paper to wrap up the money, but that nothing was said by Shields about requiring a tribute of $13 a barrel for the beer that was produced."

Then, after stating that "Shields himself took the witness stand in his own behalf, and absolutely denied any connection with this enterprise other than as a friend of the parties engaged," he went on to say:

"There is a sharp dispute in testimony between Shields, Rothstein, Widman, Holzmann, and Dicklick, as to the $13 payment. We cannot tell you which one of the witnesses to believe. That is your province. You may say where the truth of the matter lies. You have a right to determine, from their appearance on the witness stand, their interest in this enterprise, what is the correct state of affairs—who is telling the truth."

Conceding, as he must, that this statement of the issue and the testimony was fair, the defendant, Shields, contends the court committed an error in using the language quoted below. It will be recalled that Dicklick, who had confessed his guilt, when called as a witness by Shields, had confirmed Shields' testimony that he was innocent, and that Holzmann and Rothstein, who were on trial and in their testimony confessed their guilt, were called by the government, contradicted Shields, and swore they had paid Shields $80,000 for protection money. Bearing on the testimony of all three self-confessed participants in the conspiracy charged, the court then said—and herein is the alleged error:

"Now, in considering the testimony of Julius Rothstein and William Holzmann, you will have to scrutinize that testimony carefully. They are self-confessed violators of the law, and the rule is that testimony of that kind must be carefully scrutinized. Upon that testimony alone you can find a verdict, even, if you believe it; but it should be carefully scrutinized by the jury. The same thing may be said in regard to the testimony of Milan Dicklick, who was called as a witness on behalf of the defendants. He entered a plea

of guilty in this case, and was a party to the violation of the law. His testimony ought to be scrutinized with the same degree of care that you are called upon to scrutinize the testimony of Julius Rothstein and William Holzmann, the witnesses offered by the government in this particular matter."

And the alleged error is in the court's putting the testimony of all three men on a parity. Confessedly, all three were in like situations as self-confessed violators of the law, etc. Their several interests in telling or concealing the truth might be different, and might or might not affect their credibility with the jury; but, in view of their admitted guilt, was there error in the court's cautioning the jury that, as self-confessed violators of the law, "that testimony of that kind must be carefully scrutinized"? Assuredly, as far as Rothstein's and Holzmann's testimony was concerned, this instruction was right, and indeed Shields was entitled to have the caution of the court that testimony coming from that source "must be carefully scrutinized."

But when Shields, by calling Dicklick, went to the same self-confessed source for testimony exculpating him, why was not the court right in giving the same caution that it also "must be carefully scrutinized"? All three were participants in the same transaction. All were testifying about the same occurrence. All were confessedly guilty. Why should the testimony of two be carefully scrutinized, and that of a third be not, to use the alleged erroneous words of the court, "scrutinized with the same degree of care that you are called upon to scrutinize the testimony of Julius Rothstein and William Holzmann, the witnesses offered by the government in this particular matter"? The situation was one where equality of scrutiny was requisite, because there was equality of self-confessed guilty source from which it came. And that such necessity of careful scrutiny applied alike to self-confessed guilt, no matter by which side the witness was called, seems recognized by the law.

In Simpson v. State, 78 Ga. 91, it was held "that an accomplice is not, as a general rule, entitled to the full credit given to other witnesses, whether he be introduced by the state or the defendant, without corroboration, seems to be well-settled." And further, referring to the testimony of self-confessed guilty witnesses, the Supreme Court in Crawford v. United States, 212 U. S. 204, 29 S. Ct. 268 (53 L. Ed. 465, 15 Ann. Cas. 392), in that the witness was called by the government, referred to the character of such witness in these general descriptive terms: "The evidence of such a witness ought to be received with suspicion, and with the very greatest care and caution, and ought not to be passed upon by the jury under the same rules governing other and apparently credible witnesses." Such being the case, we hold it was not error, but indeed the duty of the court, to caution the jury that the testimony of all three participants "must be carefully scrutinized."

[2] The next error assigned is that the court erred in admitting the testimony of Rothstein and Holzmann on behalf of the government. These two men were defendants. They were represented by other counsel than Shields. They took part in the trial for two days, after which they turned state's evidence, were called by the government, and testified against objection by Shields' counsel. This is assigned as error, but we find no error in the court so holding. The witnesses saw fit to voluntarily go on the stand and give their evidence. When called, they were apprised of their rights by the court, viz.: "The right of a defendant to remain silent is a personal right, and he is not obliged to respond to the call of the government, unless he chooses. Apparently he has chosen to be sworn and testify as a witness on behalf of the government, and he may do so."

It is argued at length that these witnesses were not entitled to the statutory immunity allowance (section 30 of title 2 of the National Prohibition Act [Comp. St. § 10138½q]), and therefore the court erred in admitting their testimony at all. But this contention, even if well founded, is apart from the question before us, for, conceding for present purposes the immunity statute did not apply, the government clearly had a right to use the testimony of these men, if they confessed their guilt and voluntarily went on the stand.

[3] It remains to consider one matter which is not assigned for error, but which is urged upon us by counsel as a plain error apparent on the face of the record. As rule 11 of this court provides, "The court, at its option, however, may notice a plain error not assigned," we have the power to consider such error, though not assigned. But, after careful consideration, we find no error in the court's action.

[4] The case involved many defendants, much testimony, and necessarily much expense. When finally submitted to the jury, all of the defendants charged were represented by the same counsel. Whatever was the

inducing cause moving counsel for the defendants, whether they desired to end the case and avoid another trial by reason of disagreement, or whether they expected a verdict of acquittal if the jury were not discharged, they joined with the counsel for the government, and, as the record shows, "requested the court to hold the jury in deliberation until they should agree upon a verdict." After remaining out some time, the jury sent a note to the court stating: "We, the jury, find the defendants John G. Emmerling, Charles Lynch, not guilty on all counts. E. W. Hardison, J. E. Hunter, and J. L. Simler guilty on all counts. Daniel J. Shields, Harry Widman, J. M. Gastman, unable to agree. [Signed] E. B. Milligan, Foreman." In reply the judge returned a note: "The jury will have to find, also, whether Shields, Widman, and Gastman are guilty or not guilty. F. P. Schoonmaker, Judge."

The counsel for the defendants had left the court and were not in attendance when such action was taken. After further deliberation, the jury returned a verdict finding all of the defendants, except Emmerling and Lynch, guilty. Subsequently the trial judge, on application of counsel for Shields to grant an exception to said additional instructions in writing, and thereby lay the foundation for an assignment of error, declined to do so, stating: "For the reason that counsel for the defendant Daniel J. Shields requested the court to hold the jury in deliberation until they should agree upon a verdict, and therefore, when the court received the communication from the jury, it was returned with the instructions complained." It is not contended that the facts were not as stated by the judge. Therefore we have before us the question whether, when counsel in advance make a request to the court to do what the court subsequently does, can the court be convicted of error for doing what counsel asked it to do?

[5] The justified reliance of court on the request of counsel, avoidance of abortive mistrials, and the timely administration of a court's work, based on the verdict of a jury which had evidence to support it, all unite in making the case one where with one breath a court cannot be asked by counsel to take a step in a case, and later be convicted of error because it has complied with such request, for, as is said in 17 Corpus Juris, 373, 374, "a defendant in a criminal case cannot complain of error which he himself has invited."

So holding, the judgment below is affirmed.