# Commonwealth *v.* Dennery, Appellant.

*Criminal law—Murder—First degree — Robbery — Motive — Ill will—Identification of defendant—Voice—Evidence—Res gestæ— Charge—Sufficiency—Avoiding arrest—Rebutting inference—Conviction of accomplices — Admissibility — Jurors of same name— Error in summoning—Waiver—Act of March 31, 1860, Sec. 53, P. L. 427.*

1. In the trial of an indictment for murder it appeared that the defendant and two confederates, all armed with revolvers and with their faces partly concealed with handkerchiefs, went to a shanty where deceased was visiting.   The defendant entered, placed his revolver against deceased's head and shot and killed him instantly. Defendant and his confederates compelled the other occupants of the shanty to hold up their hands and took from the only one possessing any money all that he had.   Defendant was positively

identified by one of the occupants of the shanty by his size, unusually light hair, and by the features of the upper part of his face which was exposed, and was identified by another by his voice, although less positively. There was evidence that at about one o'clock on the day of the shooting defendant and his two confederates were together at a camp in the vicinity and were overheard talking about the money at the shanty and planning to get it, that later in the afternoon they were again overheard talking on the same subject, and that they left the camp together half an hour before the commission of the crime. Shortly after the shooting defendant appeared in the neighborhood acting in a nervous, excited and hurried manner and stated to two acquaintances, "we had some shooting up there and the neighbors are telephoning the police." There was evidence that three or four days before the murder deceased had said in the defendant's presence that defendant had taken money from him and had attempted to commit an unnatural offense upon him. Defendant fled and was apprehended seven months later in another state where he was working under an assumed name. *Held,* a verdict of guilty of murder of the first degree was justified by the evidence.

2. In a homicide case the statement by one of the witnesses to the shooting, just as the robbers were leaving the shanty, that the defendant was the one who had done it, was properly admitted as part of the res gestæ.

3. In such case the fact that deceased had accused defendant of criminal offenses was admissible as tending to show ill feeling between defendant and deceased, but not for the purpose of showing defendant's guilt of an independent crime. In a homicide case it is proper for the Commonwealth to prove any facts naturally tending to show defendant's hostility toward deceased.

4. In such case, conceding that the defendant returned to the town where the crime was committed for a short time on the night of the homicide, and later gave his correct name in an adjoining county, the court could not charge as a matter of law that such facts rebutted any inference that the defendant fled for the purpose of avoiding arrest.

5. In such case in view of the evidence tending to establish a conspiracy between the defendants, and also of that tending to show that three men actually committed the robbery, evidence of the conviction and sentence of the other defendants was properly admitted.

6. The court is not required in a homicide case to call the jury's attention to every item of evidence, and it is no objection to a charge that something more might have been added. The charge

is sufficient if it embraces the important features for and against the defendant.

7. In a homicide case it is not error for the court to charge "It would be a disgrace to the administration of the law if any considerable number of innocent men were ever convicted and it would be equally a disgrace if any large number of guilty men escaped."

8. Where a summons mailed to a juror in a borough was errone-· ously delivered to a person of the same name residing in an adjoining township and using the same post office, and the latter appeared and on his voir dire gave his correct name and residence, and was accepted and served as a juror, such irregularity was cured and affords no ground for setting aside a verdict in a homicide case.

Argued Sept. 24, 1917. Appeal, No. 184, Jan. T., 1917, by defendant, from judgment of O. & T. Clearfield Co., May T., 1916, No. 50, on verdict of guilty of murder of the first decree in case of Commonwealth of Pennsylvania v. W. M. Dennery, alias Mike Dennery, alias Whitey. Before BROWN, C. J., MESTREZAT, POTTER, STEWART, MOSCHZISKER, FRAZER and WALLING, JJ. Affirmed.

Indictment for murder. Before BELL, P. J.

From the evidence it appears that Tom Shade, a cripple, lived alone in a shanty in Clearfield Borough and worked for a brick company. The shanty had two rooms, a front room, in which was Shade's bed, and a kitchen. On January 31, 1916, he had quit work for a day or two and was indulging, as he occasionally did, in the excessive use of liquor, having at the shanty at that time a small keg of beer and a bottle of whiskey, which he shared with some of his friends who called during the day. On that evening, at about fifteen minutes after six o'clock, while he and John Rowles, the deceased, were in the front room, and two other friends named Patrick Kelley and Michael Brawley were in the kitchen, three men armed with revolvers and their faces partly concealed by handkerchiefs entered the shanty, two in the

kitchen and the third in the front room. The latter at once grabbed Rowles' face and turned it aside with his left hand and with his right hand placed the revolver against Rowles' head and fired, killing him instantly. The assailant then covered Shade with his revolver, and with repeated threats of instant death demanded his money and compelled him to search therefor in different parts of the room, including the bed, but found none. At the same time Kelley and Brawley were held up by the two robbers in the kitchen and forced to stand facing the wall with their hands above their heads while they were searched.

Meantime the robber in the front room looked through the door into the kitchen and told his confederates to search the man with the cap on, referring to Kelley, and especially to look in the watch pocket of his pants, where they found two ten dollar bills and a five dollar bill, all of which were taken and the robbers departed.

Mike Dennery, the defendant, has an unusually light complexion and is a large man, about twenty-seven years of age, a sailor on the lakes in summer and a tramp in winter. He came to Clearfield about December 27, 1915, and until the fifteenth of January, 1916, was employed there as dish washer in a hotel. When he ceased that work he had a few dollars and remained around Clearfield until the evening of the homicide, sleeping with other tramps at a brick kiln. During this time he did some begging and lived as such men usually do, spending considerable time at a place called "the camp" on the bank of the river, where tramps built a fire and did cooking. John Rowles, the deceased, was a resident of Clearfield and worked nights at one of the brick plants. He was subject to fits, not strong in any respect, and had at one time been an inmate of the county home. He had no regular boarding place for some days prior to his death and seems to have associated more or less with tramps. He met the defendant about two weeks prior to his death and a friendship sprang up between them;

they were often seen together and he introduced the defendant as his brother; they tried to rent a shack for their joint use and were together several times at Shade's shanty, including the morning of the day of the homicide; at which time Rowles gave Kelley two ten dollar bills and a five dollar bill belonging to Shade, and which Kelley then put in the watch pocket of his pants.

Before the homicide the defendant had become acquainted with two other tramps known as Allen and Wilson; and the three were jointly indicted for the murder of Rowles. Allen and Wilson were arrested the same night at DuBois on an outgoing freight train, and this defendant, who left Clearfield that evening, was apprehended about seven months later at Cleveland, Ohio, where he was working under an assumed name. Meantime Allen and Wilson, for their complicity in the crime, had been tried and convicted of murder in the second degree. At the trial of this defendant a large amount of testimony was submitted tending to show, inter alia, that a few days prior to the robbery he saw Shade have about eighty dollars at the shanty; that at about one o'clock on the day of the crime the three defendants were at the camp where they ate dinner, also drank intoxicating liquor and were overheard talking about the money at the shanty and planning to go and take it; that later in the afternoon they returned to camp and continued the talk upon the same subject and left there together about one-half hour before the crime was committed.

It was raining that evening and some minutes after the robbery Dennery came to one of the brick kilns wet and muddy, appeared to be nervous and excited and in a hurry and stated to two other tramps there with whom he was acquainted that, "we had some shooting up there and the neighbors are telephoning for the police......you better beat it"; and further said, "as soon as we went in Jimmy (meaning Wilson) started to shoot"; and also in effect that he would get even with his con-

federates for keeping all of the money. Then he and the two others thus addressed caught a freight train and left Clearfield. All the defendants denied their guilt and submitted evidence tending to discredit and explain that of the Commonwealth. The evidence for the defense tended to show that this defendant returned that night and got some underwear at the brick kiln, then caught another train out before daylight and went into an adjoining county where he worked a week in an ice plant and served ten days in jail for trespassing on the railroad, and in each instance there gave his true name. Each of his confederates had a revolver when arrested; and money corresponding to that taken from Kelley was found on the car floor where one of them sat when being brought back that night from DuBois. At Clearfield this defendant was sometimes referred to as "The Big Swede," although not of that nationality. Shade, who knew him well and had a good chance to see him that night, as the room was lighted up and the handkerchief covered only the lower part of his face, testified positively that he was the man who shot Rowles; and Kelley, who based his conclusion on the assailant's voice, was of the same opinion, though not so positive.

Just after the robbers had left the shanty, Shade said to Kelley and Brawley, in effect, that it was the big Swede who shot Rowles.

There was evidence to the effect that three or four days prior to the murder Rowles had said in the presence of defendant that the latter had taken money from him and also had attempted to commit upon him an unnatural offense.

Verdict of guilty of murder of the first degree on which judgment of sentence was subsequently passed. Defendant appealed.

*Errors assigned,* among others, were various rulings on evidence, the charge of the court, the refusal of defendant's motion for a new trial, and judgment of the court imposing sentence.

*A. M. Liveright* and *James A. Gleason,* with them *W. H. Patterson, Jr.,* and *D. L. Krebs, Jr.,* for appellant.— The evidence that deceased had charged defendant with attempting to commit an unnatural crime was erroneously admitted: Commonwealth v. Andrews, 234 Pa. 597; Commonwealth v. Haines, 257 Pa. 289; Commonwealth v. Silcox, 161 Pa. 485.

The charge was inadequate. It is the duty of the court to call the attention of the jury to the testimony of the numerous witnesses called by the defendant in support of a material point: Commonwealth v. Andrews, 234 Pa. 597; Commonwealth v. Kaiser, 184 Pa. 493; Commonwealth v. Colandro, 231 Pa. 343; Commonwealth v. Ronello, 251 Pa. 329.

The jury was not lawfully constituted: Commonwealth v. Beucher, 10 Pa. C. C. 3; Commonwealth v. Spring, 5 Clark (Pa.) 238.

*Walter Welch,* District Attorney, and *Allison O. Smith,* for appellee.—Evidence indicating that deceased had charged defendant with attempting to commit an unnatural crime was properly admitted: Commonwealth v. Haines, 257 Pa. 289.

The fact that the wrong person was summoned as a juror is not ground for the granting of a new trial in a homicide case where such person appeared, was examined on his voir dire and accepted as a juror: Acts of February 21, 1814, Sec. 1, P. L. 60, and March 31, 1860, P. L. 427, Sec. 53.

OPINION BY MR. JUSTICE WALLING, October 19, 1917:

This is an appeal by the defendant from the judgment on conviction of murder of the first degree. We have carefully examined all of the assignments of error and the entire record and find no reason to disturb the judgment. The case was well tried by court and counsel and the verdict is supported by abundant evidence.

Conceding that defendant returned to Clearfield for a

short time on the night of the homicide and later gave his correct name in the adjoining county, the court could not instruct the jury that as matter of law such facts rebutted any inference that defendant fled to avoid arrest. The statement made by the witness, Shade, just as the robbers departed was properly admitted as part of the res gestæ. The fact that the deceased had accused defendant of criminal offenses was admissible on the question of motive, as it tended to show ill feeling between them. A man would naturally hate one who had accused him of attempting to commit an infamous crime. This evidence merely went to the extent of showing that the deceased had made such an accusation against defendant and for that purpose it was competent. See Commonwealth v. Andrews, 234 Pa. 597. As Rowles was not resisting the robbers, his murder was such as might suggest some other motive, hence it was proper for the Commonwealth to prove any facts naturally tending to show the defendant's prior hostility to the deceased. The evidence did not establish defendant's guilt of an independent crime and was not admissible for that purpose: Commonwealth v. Haines, 257 Pa. 289.

The charge was comprehensive and accurate, embracing the important features for and against the defendant; and was fair and adequate. The court is not required to call the jury's attention to every item of evidence, and it is no objection to a charge that something more might properly have been added.

"It is not possible nor even desirable that the judge should refer to and emphasize every item of evidence on both sides in a way that the counsel would consider adequate. In doing so he would run much risk of coming to speak as an advocate rather than a judge. Nor is he required to go over all the evidence on any particular point every time he refers to the point in the course of his charge. It is enough if he gives to the jury a general review of the evidence on the one side and the other, which fairly and adequately presents the respective con-

tentions of the parties, with enough reference to the items of evidence to assist the jury in recalling it as a substantial whole, and to appreciate its bearing": Commonwealth v. Kaiser, 184 Pa. 493, 499. It was not legal error for the court to say to the jury that, "It would be a disgrace to the administration of the law if any considerable number of innocent men were ever convicted and it would be equally a disgrace if any large number of guilty men escaped." In view of the evidence tending to establish a conspiracy between the defendants, and also of that tending to show that three men actually committed the robbery, evidence of the conviction and sentence of the other defendants was proper for the consideration of the jury in this case.

There was a John Rodkey residing in Houtzdale Borough, and also a John Rodkey residing about two miles from the borough, in an adjoining township. The borough was the post office of both. John Rodkey, of Houtzdale, was drawn as a juror and the postal authorities delivered the summons to the one residing in the township. He appeared as a juror and on his voir dire gave his correct residence as above stated. He was accepted and served as a juror in this case. There was no fraud or impersonation. Conceding that the summons was intended for the other John Rodkey, it was merely such an irregularity as was cured by the statute and affords no ground for setting aside the verdict. See Commonwealth v. Potts, 241 Pa. 325.

The assignments of error are all overruled, the judgment is affirmed and the record is remitted for the purpose of execution.