## Corbin *v.* Haws Refractories Co., Appellant.

*Negligence — Corporations — Overloading boat — Invitation to come on boat—Employee of corporation—Evidence—Experts—Discretion of court.*

1. Where a corporation has asked, or by implication induced, another to come upon its premises, it owes to him a duty to see that such are in a reasonably safe condition, and if injury occurs by reason of failure to exercise the proper care, the owner is liable for the injury sustained.

2. Where a boat is the property of a corporation, and used as a part of its plant to convey employees and others having business with the company from one side of a river to another, and the boat is under the direct control of the manager, the company will be liable for an injury to a person crossing in the boat by invitation, if it appears that the boat was not in proper condition, or due care was not exercised in handling it.

3. If it appears that the boat in crossing the river at a time of high water was overturned and seven of eleven invited passengers were drowned, and it is claimed that the boat which was in the control of the manager of the owner was overcrowded, a witness, familiar with the river, may be permitted to testify, that on the day after the accident he recovered the boat, used it to search for the bodies of the drowned persons, and that, in his opinion, after

stating its construction and size, and viewing the condition of the river at the time, not more than six persons could have been transferred with safety.

4. The propriety of such testimony is strengthened where it appears that the description of the boat was corroborated by another witness, and it also appears that the court specially directed the jury to disregard the opinion if they found it to be based on a misapprehension of the facts.

5. In such case the conclusion to be drawn from the facts as narrated was properly the subject of expert testimony. The receipt of such testimony is largely a matter within the discretion of the trial court.

Dissenting opinion by Mr. Justice SCHAFFER, in which Mr. Justice FRAZER and Mr. Justice KEPHART joined.

Argued February 26, 1923. Appeal, No. 228, Jan. T., 1923, by defendant, from judgment of C. P. Mifflin Co., May T., 1920, No. 161, on verdict for plaintiff, in case of Martha Corbin v. Haws Refractories Co. Before MOSCH-ZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Trespass for death of plaintiff's husband. Before BAILEY, P. J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff for $8,438.48. Defendant appealed.

*Errors assigned,* inter alia, were (1) ruling on evidence referred to in the opinion of the Supreme Court and (7) refusal of judgment for defendant n. o. v., quoting record.

*J. C. Davies,* with him *Rufus C. Elder,* for appellant.—All the facts surrounding the accident being susceptible of proof, the court erred in admitting expert opinion: Kuhn v. R. R., 255 Pa. 445; Chambers v. Machine Co., 251 Pa. 618; Buchanan v. Flinn, 51 Pa. Superior Ct. 145; Ake v. Pittsburgh, 238 Pa. 371; Platz v. McKean Co.,

178 Pa. 601; Auberle v. McKeesport City, 179 Pa. 321; Dooner v. Canal Co., 164 Pa. 17.

If expert opinion was appropriate, the witness did not qualify, and the court erred in permitting him to express an opinion: Com. v. Farrell, 187 Pa. 408.

*J. Banks Kurtz* and *H. H. Waite,* with them *A. Reed Hayes,* for appellee.—Defendant was bound to exercise ordinary care, as plaintiff's husband was its guest: Ryan v. Granite Co., 266 Pa. 105; Robb v. Pond Co., 269 Pa. 298; Craig v. Mfg. Co., 272 Pa. 219.

The burden was on defendant to explain the cause of the sinking of the boat: Delahunt v. Telegraph Co., 215 Pa. 241; Shafer v. Lacock, 168 Pa. 497; Silver Costume Co. v. Passant, 71 Pa. Superior Ct. 252.

The court did not err in receiving in evidence the opinion of an expert witness as to the carrying capacity of the boat: Folkman v. Laurer, 244 Pa. 605; Stremme v. Dyer, 223 Pa. 7.

OPINION BY MR. JUSTICE SADLER, April 9, 1923:

Cloyd Corbin was a member of an organization composed of foremen and superintendents of various concerns engaged in the manufacture of silica brick. It was the custom of those associated to visit, from time to time, the plants of others interested in like work for the purpose of observing the methods of operation, the expenses being paid by their employers. The Haws Refractories Company maintained a place of business in Mifflin County, and its manager arranged for an inspection, on May 10, 1919, inviting, amongst others, the deceased. A lunch was served at Lewistown, for which defendant paid, and the guests were then conveyed by automobile to a point on the north side of the Juniata River. Here was a landing place, from which a flatboat was moved, by means of an overhead cable and the energy of the water, to the opposite bank. At the time, the water was unusually high and the current swift.

Under the supervision of an employee, twelve of the party were transferred to the south side in safety, though danger threatened. The second attempted trip was personally conducted by the superintendent of the company, and, on his order, the number of passengers was reduced by one. After crossing one-third of the distance, the boat suddenly submerged, resulting in the death of seven, including plaintiff's husband. The cause of the sinking was disputed; it was asserted on the one hand to be due to overloading of the raft and the attempt to move it, in view of the existing condition of the river, while defendant insisted the accident was the consequence of a shifting of the passengers to the rear. An action to recover damages was brought by Mrs. Corbin, and a verdict rendered in her favor. The motion made by defendant for judgment n. o. v. was overruled; hence this appeal.

A number of assignments of error have been filed, but the questions really involved are few. It is first contended that no such relation was shown between the deceased and defendant as to impose on the latter responsibility for the loss occasioned. The claim is made that the passengers on the boat were there at the suggestion of employees of the company, and were not to be considered as invitees of it. Evidence was offered to show the membership of Corbin in the club above referred to, and that the general superintendent of defendant requested the visit to its plant. The Refractories Company furnished the entertainment, as well as the motors which carried the guests to the boat landing, and was owner of the ferry, which was loaded and moved under the direction of its manager. There is some testimony that the general officers of the corporation had no knowledge of the proposed meeting, but it was for the jurors to say, under the evidence submitted, whether the employees were acting within the scope of their authority in extending the invitation, and in following the course which they pursued. They were carefully instructed as to the

necessity of an affirmative finding before a recovery would be justified, and determined that Corbin was a guest of the corporation. Where one has asked, or by implication induced, another to come upon its premises, it owes to him a duty to see that such are in a reasonably safe condition, and if injury occurs by reason of failure to exercise the proper care, the owner is liable for damage sustained: 20 R. C. L. 55; Robb v. Niles-Bement-Pond Co., 269 Pa. 298. Here, the boat was the property of defendant, and used, as a part of its plant, to convey employees, and others having business with the concern, from the north to the south side of the river. It was under the direct control of the managers, and, if not in proper condition, or due care was not exercised in the handling of it, defendant is responsible for the loss occurring.

Appellant, however, insists no recovery can be had in this case, though the jury has found the deceased to be the invitee of the company, for the reason that no adequate proof of negligence was offered on behalf of plaintiff, and binding instructions should, therefore, have been given for it. As already observed, the ferry, operated as it was on a cable, and securing its motive power from the current of the stream, was being used at a time when the river was at flood-stage. The first crossing made was attended with risk, and it is to be noted that, upon the second attempted trip, the general superintendent, who had it in charge, directed one of those proposing to accompany the others to withdraw, because of the danger which he apparently realized. If the passengers permitted on the boat were in excess of the capacity, in view of its construction and the river conditions prevailing, then, for the lack of due care in the operation, an action could be maintained. Evidence was offered to show that on other occasions a larger number of people had been carried by the same ferry, but it also appeared that at the times referred to the crossing

place was at a different point on the river, and the height and current of the stream were comparatively normal.

The plaintiff proposed to prove by a witness standing on the bank that the raft was dangerously overcrowded, but this testimony was not admitted by the court below. One person, Ballentine, was permitted to give an opinion. He was a man about fifty years of age, and had spent most of his life along the Juniata River, using all sorts of boats, and knew the stream in all conditions, and, further, made use of a ferry attached to a cable and propelled by the water, such as that operated by defendant. On the day after the occurrence which gave rise to this suit, he recovered the identical boat, and used it for a week thereafter in searching for the bodies of those who were drowned. He described its construction and size,— which was in accord with the evidence given by Fox, —and testified as to its carrying capacity, stating his conclusion that, in view of the river conditions, not more than six persons could have been transferred with safety.

The main ground of complaint now raised is based on the admission of this opinion. Attention is called to the lack of experience of the witness, to his want of knowledge of the height of the river on the day in question, and his inaccuracy in describing the size of the craft which was submerged. It is true he was not at the place of the accident at the time it occurred, but he did arrive on the following morning, recovered the boat and used it for many days thereafter. He gave, to the best of his recollection, a statement of its dimensions, based on personal observation, and was corroborated by the witness Fox. This estimate was properly admitted (Downey Bros. v. P. R. R. Co., 219 Pa. 32), and, though contradicted by others who claimed to have made more accurate measurements, the dispute was one for the jury. The rights of the defendant were amply protected when the court affirmed its fourth point, directing that Ballen-

tine's evidence be disregarded, if found to be based on a misapprehension of the facts.

It is, however, urged that since the attending circumstances could be adequately described, the expression of any opinion as to the carrying capacity of the boat was unjustified, but, in our view, this contention is not tenable: Delaware and C. S. Towboat Co. v. Starrs, 69 Pa. 36, 41; Reed v. Dick, 8 Watts 479; Union Ins. Co. v. Smith, 124 U. S. 405; Ogden v. Parsons, 23 How. 167; Eastern Transportation Line v. Hope, 95 U. S. 297. The known facts could be narrated by the witnesses, but the conclusion to be drawn from them was properly the subject of expert testimony. Were we in doubt as to the competency of Ballentine to state his judgment, it would be resolved in favor of the ruling of the court below, as the receipt of this class of evidence is largely a matter within its discretion: Stevenson v. Coal Company, 203 Pa. 316; 22 C. J. 514.

The defendant produced an engineer who fixed the buoyancy of a craft of dimensions such as testified to by its witnesses, but who expressed no opinion as to the number of people who could be safely transported on it. This threw little light on the question as to whether the boat was dangerously overloaded, and was based on measurements which were in contradiction of the figures given by witnesses for the plaintiff.

After a careful review of the entire record, we are convinced the case was one for the jury. Both the questions of negligence and contributory negligence were submitted in a fair and impartial charge. There was sufficient evidence to justify the finding made, and the assignments of error are overruled.

The judgment is affirmed.

DISSENTING OPINION BY MR. JUSTICE SCHAFFER, April 9, 1923:

Plaintiff's decedent was one of a party of sightseers or information seekers bound on a visit to defendant's

plant. In order to reach it, they had to cross the Juniata River. The customary way of making the crossing, owing to the fact that there was no bridge in the vicinity, was by means of a ferry which defendant had constructed to transport its employees. The ferry consisted of a flat-bottom boat, testified by its builder to be sixteen feet long and seven feet wide, attached by means of pulleys and a rope to a wire strung over the river; the motive power was the current which quartered the boat. On arrival at the stream, thirteen of the party got into the boat and were transported to the other side, while crossing they were subjected to some splashing of the water. The boat returned and on the second trip, plaintiff's decedent and eleven others, one of them defendant's manager, made up the passengers. There were no seats in the boat, all stood. When the craft had proceeded about a third of the way across the stream, water began to splash into it, just why is not entirely clear, in all probability due to the swiftness and roughness of the water, as the river was in flood owing to a rain storm. As a consequence of the water entering the boat, some of its occupants moved toward the stern, the boat sank and seven were drowned.

The negligence alleged is the overloading of the boat and the testimony from which this conclusion must be drawn, is that of a witness, Ballentine, a boatman and fisherman on the river, who said from his experience with boats that the number of persons in the one in question was greater than should have been carried. He did not qualify himself in any scientific way to speak on this subject, and the evidence showed that not only on the trip immediately before that on which the accident took place, more persons were carried in safety, but on repeated occasions, during the months the boat had been operating, many more persons had been carried safely, in instances, more than twice as many. It would seem to me the witness was not competent to speak on the safe carrying capacity of the boat, particularly as its ability in this

respect had been demonstrated. Furthermore, in my view, his evidence, upon which the verdict must rest, was not trustworthy under the rule laid down in Chapman v. Clothier, 274 Pa. 394. He arrived at his conclusion by a comparison between the craft in question and one of his own, testifying that in his opinion (without accurate measurement) they were of similar kind and size. The man who built the boat and another who measured it said it was much larger than the one belonging to the witness. It seems obvious to me that the size of the boat was not the determining factor as to its carrying capacity, but the manner of its construction and its buoyancy. It should be borne in mind that water conditions suddenly arising—a swirl in the current—may create a peril which could not be foreseen. Water is a dangerous element and those who venture on it assume a certain risk. When the decedent and the others entered the boat, they did so voluntarily; if they overloaded it, the fault was not that of the defendant. While it is true, defendant's manager was on the boat, he was there, not in his capacity as superintendent, but just as the other passengers on the boat were; for what he then did or failed to do appellant was not responsible.

Weaver v. Carnegie Steel Co., 223 Pa. 238, was a much stronger case for the plaintiff than is the case at bar. There a party of two hundred men visited a steel plant for their own pleasure and benefit, the steel company furnishing them with a guide. One of them fell through an aperture in the floor and was injured. We held he was a mere licensee or guest, that he assumed the ordinary risks of a visit to such a place and could not recover. If authority were needed to rule the pending case in favor of the defendant, the one just referred to would seem to me to be controlling. But, aside from precedent, on the facts as they appear and as stated in the majority opinion, I am unable to apprehend the duty owing by defendant to the decedent which it failed to perform.

In my opinion, judgment should be entered for defendant on the ground that no negligence was shown.

Justice FRAZER and Justice KEPHART join this dissent.