648

## EUSTIS PACKING CO. v. MARTIN et al.
### No. 9737.

Circuit Court of Appeals, Fifth Circuit.
Sept. 13, 1941.

Rehearing Denied Oct. 13, 1941.

Claude L. Gray, of Orlando, Fla., J. Mack Swigert, of Cincinnati, Ohio, and Z. D. Giles, of Eustis, Fla., for appellant.

William H. Dial and Hugh Akerman, both of Orlando, Fla., for appellees.

Before FOSTER, SIBLEY, and Mc-CORD, Circuit Judges.

FOSTER, Circuit Judge.

Appellees, J. A. Martin and wife, brought this suit against appellant, Eustis Packing Co., to recover damages for breach of contract to buy and sell oranges. Appellant denied it had breached the contract and filed a counter claim for $4,000. At the close of the evidence a verdict was directed for appellees in the sum of $5,330.75, upon which judgment was entered. Error is assigned to this action of the court. The record consists of 887 pages but it is unnecessary to review all the evidence. The parties will be hereafter referred to as plaintiffs and defendant. The record shows the following facts.

An agreement was made on September 3, 1937, between plaintiffs and defendant, by which plaintiffs agreed to sell all the oranges of the 1937–1938 crop of good merchantable citrus fruit then growing on plaintiffs' groves in the counties of Lake and Marion, Florida, estimated at 14,500 boxes. Defendant agreed to buy the oranges at the price of $1.35 per standard field box, to be paid for as the fruit was picked and removed from the groves. Defendant agreed to deposit $4,000 as first payment on the fruit, that amount to be applied to the purchase price of the last oranges picked. This deposit was made and was retained by plaintiffs. The counter claim is based on this. Under the terms of the contract defendant had the right of free access to the groves, had up to and including December 31, 1937, to remove all fruit that had passed state and federal maturity tests and until February 10, 1938, to remove all oranges that would not pass in

December, 1937. The contract further provided that in case the buyer was prevented from shipping the said fruit at any time prior to the date of removal, by strikes, embargoes, quarantines, Act of God, or any other matter or thing beyond his control, time for removal and shipment should be extended a length of time equal to the delay caused by the happening of either or all of such events. The contract further provided that it covered only all fruit good and merchantable at the time the buyer was ready to remove same, within a specified time. Bad ammoniated, lemon scab, silver skin, frost damaged or badly wind damaged fruit were not included in the contract. On December 6th and 7th, 1937, a freeze occurred that admittedly damaged some of the fruit covered by the contract. After the freeze the Florida Citrus Commission issued a bulletin, No. 20, effective December 21, 1937, which recited that the extent of the damage from freezing did not become apparent for varying periods of time owing to weather and other conditions, during which periods it was impossible to correctly determine the extent of damage to said citrus fruits or whether same were edible or fit for human consumption or whether the same were so damaged as to affect their classification or grading for standardization purposes and prohibited its inspectors from issuing any maturity or grade certificates until January 1, 1938. The Florida Citrus Commission issued another bulletin, No. 21, effective Sunday, January 2, 1938, requiring that all citrus fruit not meeting requirements of United States grade No. 3 or higher on account of dryness or freezing injury should be set aside in a place designated by the inspector, placed under seal of the Commissioner of Agriculture and not be moved except under the authority of the Commissioner of Agriculture or his authorized agent. After the freeze there was an exchange of telegrams and letters between plaintiffs and defendant. Defendant requested it be permitted to harvest the fruit and move it to its packing house for inspection and grading and agreed to pay for all good merchantable fruit at the contract price. This request was refused and plaintiffs' caretaker was ordered to not permit the removal of any fruit unless paid for at the grove. Plaintiffs declined to extend the time for removal of the fruit beyond December 31, 1937, and notified defendant its agents would not be permitted to enter the groves after that date. About December 26th, plaintiffs made an agreement, to be effective January 1, 1938, with Knowles Packing Co., to sell it the balance of the fruit remaining on the groves in bulk for $4,500. Subsequently this agreement was verbally changed to make it a sort of joint adventure but that is immaterial. After January 1, 1938, Knowles Packing Co. harvested the fruit remaining on the groves and made returns to plaintiffs under the agreement.

It is evident the verdict was directed on the assumption that all or practically all the fruit on the groves was worth $1.35 a box and the verdict was computed as the difference between that amount and what plaintiffs had received from defendant, including the deposit of $4,000, and what they had realized from the sale to Knowles. It is certain some of the fruit was damaged by cold and the verdict was excessive.

Defendants assign error to the exclusion and admission of certain testimony. Defendant attempted to introduce testimony tending to show the ordinary accepted meaning in Lake and Marion Counties, Florida, of the term good merchantable citrus fruit, when used by persons associated with the citrus industry. This evidence was excluded. The term good merchantable citrus fruit is not self-defining but no doubt has a well understood meaning in the trade. It may be assumed, in view of the bulletins of the Florida Citrus Commission, that fruits damaged by cold would not come within that term. The meaning of the term might also depend upon other factors. The modern rule is that parol may be admitted to show the usage of a trade or locality and explain the meaning of trade terms used in a written contract. The exclusion of the evidence above referred to was error. Wigmore, Sec. 264312. Evidence offered by defendant to show the custom between the parties as to payment for the fruit was excluded. This evidence would have tended to show the interpretation of the contract by the parties and whether the requirement that defendant pay for the fruit at the grove before removing it was reasonable. The exclusion of this evidence may have been error but we will pass it without decision.

It is certain that under the terms of the contract defendant, because of the freeze and embargo, was entitled to a delay beyond December 31, in which to pick and remove the oranges. Therefore, when this right was denied the contract was

**650**

breached by plaintiffs. The case presented is practically on all fours with the decision of the Supreme Court of Florida in the case of Givens v. Vaughn-Griffin Packing Co., opinion filed April 11, 1941, 1 So.2d 714. That is the latest decision of the Supreme Court of Florida. It supports the conclusion we have reached and we are bound to follow it. The case was clearly one for the jury. There was substantial conflict in the material evidence as to the extent of the damage from cold and the court could not, as a matter of law, direct a verdict. It was error to do so.

Other errors assigned require no discussion as they may not occur on a new trial.

The judgment is reversed and the case remanded for further proceedings not inconsistent with this opinion.