**UNITED STATES v. TONER et al.**
No. 14001, December Term, 1946.

District Court, E. D. Pennsylvania.
May 17, 1948.

Gerald A. Gleeson, U. S. Atty., and Thomas J. Clary, Asst. U. S. Atty., both of Philadelphia, Pa., and Asher W. Schwartz, Sp. Asst. to the Atty. Gen., for the United States.

Wilfred R. Lorry, and Freedman, Landy & Lorry, all of Philadelphia, Pa., for defendant William A. Toner.

MURPHY, District Judge.

Defendants were charged with violation of 18 U.S.C.A. § 88,[1] conspiracy to violate 18 U.S.C.A. § 80,[2] and in five counts respectively with violation of Section 80. McLaughlin immediately before trial plead nolo contendere.[3] Toner was found guilty by a jury. Toner moves for judgment of acquittal[4] and in the alternative for a new trial.[5]

At the conclusion of the charge of the court no exceptions in compliance with Rule 30[6] were taken. Defense counsel requested that all exhibits be sent out with the jury. The trial covered a period of five days including two night sessions and presents a transcript of eight hundred forty-four pages.

We discuss first defendant's contention that the evidence was not sufficient to sustain a conviction.

In considering the sufficiency of the evidence to sustain the verdict of the jury, this Court must take that view of the evidence which is most favorable to the government; must give to the government the benefit of all the inferences which reasonably may be drawn from the evidence; and must refrain from concerning itself with the credibility of witnesses and the weight of the evidence. Affronti v. United States, 8 Cir., 1944, 145 F.2d 3, 5. The verdict of the jury must be sustained if there is substantial evidence to support it. Glasser v. United States, 1942, 315 U.S. 60, at page 80, 62 S.Ct. 457, 86 L.Ed. 680; United States v. Manton, 2 Cir. 1938, 107 F.2d 834, 839, certiorari denied 309 U.S. 664, 60 S.Ct. 590, 84 L.Ed. 1012; United States v. Michener, 3 Cir., 1945, 152 F.2d 880, 885; United States v. Toscano, 2 Cir. 1948, 166 F.2d 524.

A careful reading of the record in the light of these principles satisfies us that the verdict of the jury must be upheld.

---

[1] "(Criminal Code, section 37.) Conspiring to commit offense against United States. If two or more persons conspire either to commit an offense against the United States, or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy, each of the parties to such conspiracy shall be fined not more than $10,000, or imprisoned not more than two years, or both."

[2] "(Criminal Code, section 35(A). Presenting false claims. Whoever shall make or cause to be made or present or cause to be presented, for payment or approval, to or by any person or officer in the civil, military, or naval service of the United States, or any department thereof, or any corporation in which the United States of America is a stockholder, any claim upon or against the Government of the United States, or any department or officer thereof, or any corporation in which the United States of America is a stockholder, knowing such claim to be false, fictitious, or fraudulent; or whoever shall knowingly and willfully falsify or conceal or cover up by any trick, scheme, or device a material fact, or make or cause to be made any false or fraudulent statements or representations, or make or use or cause to be made or used any false bill, receipt, voucher, roll, account, claim, certificate, affidavit, or deposition, knowing the same to contain any fraudulent or fictitious statement or entry in any matter within the jurisdiction of any department or agency of the United States or of any corporation in which the United States of America is a stockholder, shall be fined not more than $10,000, or imprisoned not more than ten years, or both."

[3] "Nolo contendere 'is an admission of guilt for the purposes of the case.' Hudson v. United States, 272 U.S. 451, 455, 47 S.Ct. 127, 129, 71 L.Ed. 347; United States v. Norris, 281 U.S. 619, 622, 50 S.Ct. 424, 425, 74 L.Ed. 1076." United Brotherhood of Carpenters and Joiners of America v. United States, 330 U.S. 395 at page 412, 67 S.Ct. 775, 784, 91 L.Ed. 973.

[4] Rule 29, Motion for Acquittal, 18 U.S.C.A. following section 687.

[5] Rule 33, New Trial, 18 U.S.C.A. following section 687.

[6] Rule 30, Instructions, 18 U.S.C.A. following section 687.

It is not necessary to recount the evidence at length. It is enough to say that the jury could have found, and in support of their verdict, we may properly assume, did find, the following:

Atlantic and Gulf Stevedores, Inc. (herein A & G) were under contracts with War Shipping Administration (herein WSA) engaged to perform stevedoring work at the Port of Philadelphia on ships assigned to them by WSA. A & G was to be reimbursed by WSA for all direct labor charges, certain designated costs, and in addition as payment for supervision, use of gear, overhead and compensation on all cargo, a tonnage fee varying as to type of cargo. The contract defined "direct labor" as "all longshoremen * * * and other workmen employed in and about the work"; "work" as "all stevedoring work, duties, services, operations and functions in connection with stevedoring activities * * *"; "duties of the stevedore" required that A & G "load and discharge cargo; do and perform all the duties and functions usually and customarily * * * performed by a stevedore; furnish all labor of every nature and description and all gear and mechanical or other equipment * * * necessary for the most efficient loading * * * of the vessel * * * and at all times while the vessel is being worked, provide not less than one general supervisor in direct charge of the work on each vessel."

Clerking of the ships was under WSA contract the duty of another company; operation of the vessel the responsibility of the shipping company under WSA contract. Railroad work was the responsibility of the Reading and Pennsylvania Railroads.

While the stevedoring work for WSA was in progress defendants Toner, Port Manager in complete charge of stevedoring operations for A & G, and McLaughlin, the head timekeeper, met and devised a plan or scheme which they subsequently carried out whereby a group of unsigned withholding tax cards to which signatures had not been obtained were used as a basis for carrying work numbers on A & G time sheets purporting to show that the men represented by the tax numbers were working as longshoremen in performing work under the contracts. Those men did no work at all either as longshoremen or otherwise for A & G. One of them was in a mental hospital, another with the United States Army in Europe; the others were in various other places than in the employ of A & G. The work checks were carried for a period of many months, pay envelopes collected for them, charges made on daily reports and later on invoices, and all of same paid by WSA to A & G. The daily and weekly reports indicating that such men had worked and that the charges for their work were proper were signed by the defendants; the invoices were certified by Toner as being true and correct. The defendants were aware of this plan, and participated in carrying it out. Unfounded claims were made against the government until $6000 was thus obtained. The government charged the defendants with having thus conspired to defraud the government of $4376.82, and in the individual counts as to the substantive offenses as to McLaughlin $2368.96; Toner $2007.86.

The government had the burden of showing the persons named in the indictment did not work as longshoremen. This they showed clearly by calling the men themselves.

■ In addition it was necessary to show that the longshoreman work for which charges were made was not performed by any other longshoreman. The evidence showed that officials and clerks of shipping companies, clerks of clerking companies and railroad employees were paid tips and gratuities out of government funds, while in many instances they were being paid by other companies for the same hours out of government funds. The jury was justified in inferring that many of them were paid by A & G out of government funds when they performed no work at all. On some occasions they were listed as having performed longshoreman work when they did no such work. Sometimes they were represented as being the persons whose names were on the unsigned tax cards; in other cases, although listed under their own names and tax cards, they were improperly listed as longshoremen.

To prove those contentions the government called the witnesses McLaughlin, McCarthy, Rogers, Hamilton, Sink, Carr and Hathaway, as well as the A & G records. This was supplemented by testimony as to admissions by Toner before trial that he had ordered the timekeepers to carry men on the payroll as longshoremen who were not doing longshore work, that he knew it was a violation of the contract.

The A & G records showed that for the year prior to Toner becoming Port Manager there was paid out of the A & G petty cash account for tips and gratuities (exclusive of Christmas gifts) $6398.10. For the thirteen months while the plan of Toner and McLaughlin was in force only $609 was thus paid and, for the several months prior to the FBI investigation, nothing at all. As soon as the FBI arrived on' the scene payments of tips and gratuities from petty cash were again made by Toner.

. The evidence also showed that Toner and McLaughlin had been engaged in a similar practice as to two other work numbers and tax cards before April 1944. In those cases the tax cards were prepared by Toner and the numbers carried by McLaughlin and other timekeepers. The cards were shown to contain, as to one a Social Security number not existing under the Social Security System; the other purported to contain the name of a man, whereas it contained the Social Security number of a woman.

The government called an auditor from WSA to testify as an expert that the employees of shipping, clerking and railroad companies were not properly listed as longshoremen in view of the work they were doing and that claims for such work would not be allowed by him as an auditor. Further that if Toner desired to make claim for the work they were performing, such claims would first have to be approved as an extra allowance by WSA. No request for such allowance was ever made. Similarly the government called the assistant superintendent of Moore-McCormack, one of seven stevedoring companies at the Port of Philadelphia, all engaged in general stevedoring work; the Moore-McCormack company, however, also supplied clerking crews whereas A & G did not perform those services. He explained what was meant by clerking the ship, what the duties of a clerk were, what work the clerking company was to perform. The witness also testified as an expert that certain work allegedly performed by shipping company clerk crews and railroad employees was not longshoreman work at all.

From the evidence the jury was justified in finding that the charges made as to the group of tax cards were false and that those men did not work at all; that men were listed as doing longshoreman work when they should not have been charged to the government as such, but should, if they did perform any service for A & G, have been compensated by them out of their general fund or, if tips or gratuities were to be paid, out of the A & G petty cash account.

From a study of the record and a thorough consideration of the arguments and briefs of counsel, we hold that there was ample substantial testimony supporting no other reasonable hypothesis but that of guilt of the defendant Toner on all charges. In that respect the verdict of the jury is well sustained.

The defendant at the trial admitted duplicate payments to certain employees of other companies and payment for the same hours as they were being paid for by their own individual employers; insisted that they were actually doing longshoreman work, that they were covered by the provision in the contract "or other workmen". He asserted he had never paid any tips or gratuities. The jury did not believe him.

Unless there was some error in the conduct of the trial the verdict of the jury must stand. Toner insists that throughout the trial the witnesses and the court (in error) used the terms tips and gratuities as being synonymous. Toner defined a "gratuity" as a maritime term having an historical significance and meaning, only in connection with payments made to the officers of a ship who were about to engage a stevedore, so that the contract

would be awarded to the highest bidder (R. 519). Further that if you did not pay gratuities unfounded claims would be made for alleged damages after the ships were loaded or· unloaded. We find no reasonable basis in the record for accepting such definition of the term or that it was so used and understood by the several parties in the record. Cf. testimony generally and particularly that of McLaughlin (R. 175 et seq., 182), Hathaway (R. 720, 721). Rather was it used to mean tips. Webster's New International Dictionary, 2d Ed. Unabridged, defines "tip" as "to give a fee, or gratuity, to; as, to tip a servant—To give a gratuity or gratuities." The same work defines "gratuity" as "something given freely or without recompense; a gift—something voluntarily given in return for a favor or now esp. a service; hence, a bounty; a tip; a bribe."

Nowhere in Webster is there any such definition as suggested by Toner. Particularly incredible is the meaning suggested by Toner and defense counsel in view of the testimony of Toner (R. 552). Cf. R. 435 that the WSA assigned all the ships under government contracts.

Defendant's fourth reason for a new trial is that the court erred in stating it was a violation of law to pay government funds out as tips. We repeated this statement in our charge. The verdict of the jury supports the claim that Toner did pay out such funds. It was a violation of the Statute. Under the circumstances there was obviously no error in the statement of the court.

The fifth reason is that the court erred in that it sustained the right of the witness McCarthy to plead his constitutional right against self-incrimination.[7]

The witness had been subpoenaed to testify as a government witness. A witness called to testify "may not refuse to be sworn and tell what he knows, up to the point of his own involvement in crimes. At that point he may claim his constitutional privilege and refuse to go further unless given full immunity. If he continues to testify without claiming his right to be silent, he waives it." Shushan v. United States, 5 Cir., 1941, 117 F.2d 110, 117, 133 A.L.R. 1040. See United States v. Monia, 1943, 317 U.S. 424, at page 427, 63 S.Ct. 409, 87 L.Ed. 376.

"A witness may claim the privilege of silence only if the court finds that there is reasonable ground to apprehend that a direct answer to the question may place him in real and substantial danger of incrimination." Camarota v. United States, 3 Cir., 1940, 111 F.2d 243, at page 245, certiorari denied 311 U.S. 651, 61 S.Ct. 16, 85 L.Ed. 416.

For an interesting discussion of this problem, see United States v. St. Pierre, 2 Cir., 1942, 132 F.2d 837, 838, 147 A.L.R. 240, appeal dismissed 319 U.S. 41, 63 S.Ct. 910, 87 L.Ed. 1199, an opinion by Judge Learned Hand: "Whatever may have been the original limits of the privilege (Wigmore, § 2261), since Counselman v. Hitchcock, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110, it is settled in federal courts that a witness cannot be compelled to disclose anything that will 'tend' to incriminate him, whether or not the answer would be an admission of one of the constitutive elements of the crime." And again, "Unless he waived his privilege by what he had already said, it protected him against divulging * * *."

"In Brown v. Walker, 161 U.S. 591, 597, 16 S.Ct. 644, 647, 40 L.Ed. 819, it was assumed, though not held that if the witness

---

[7] Defense counsel in error views this as a question of the scope of cross examination and of the propriety of inquiring into the dishonesty of the witness to impeach his credibility. Cross examination is a matter of right. Alford v. United States, 1931, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624; United States v. Michener, 3 Cir., 1945, 152 F.2d 880, 884. The discretion of the court comes into play only after a substantial opportunity is afforded to cross examine. Lindsey v. United States, 1942, 77 U.S.App.D.C. 1, 133 F.2d 368; as to scope see United States v. Cohen, 3 Cir., 1947, 163 F.2d 667 at page 669; Meeks v. United States, 9 Cir., 1947, 163 F.2d 598; Ewing v. United States, 1942, 77 U.S.App.D.C. 14, 135 F.2d 633. Counsel cites Greenbaum v. United States, 9 Cir., 1935, 80 F.2d 113, where cross examination was unduly restricted. We agree but in that case there was no plea against self-incrimination.

914

'dicloses his criminal connections' he must 'make a full disclosure'; but just what those 'connections' must be, was left at large." 132 F.2d 838.

Speaking of Arndstein v. McCarthy, 254 U.S. 71, 41 S.Ct. 26, 65 L.Ed. 138, and McCarthy v. Arndstein, 262 U.S. 355, 43 S.Ct. 562, 67 L.Ed. 1023, Judge Hand said at page 839, of 132 F.2d, supra, "The essence of the decision is that 'an ordinary witness' does not waive his privilege 'where the previous disclosure * * * is not an active admission of guilt or incriminating facts'. [McCarthy v. Arndstein], 262 U.S. [355], at page 359, 43 S.Ct. [562], at page 563, 67 L.Ed. 1023."

See Judge Franks' dissenting opinion, 132 F.2d at pages 840, 843, discussing Foster v. People, 18 Mich. 266, "There Judge Campbell said that the test of whether there has been a 'waiver' is whether the witness 'has or has not furnished sufficient evidence to criminate himself,' and that the waiver is effective and the privilege gone when and only when the witness 'has once made a decisive disclosure.' "

"Obviously a witness may not be compelled to do more than show that the answer is likely to be dangerous to him, else he will be forced to disclose those very facts which the privilege protects." Learned Hand J. in United States v. Weisman, 2 Cir., 1940, 111 F.2d 260, 262.

"The application of the rule thus comes to depend chiefly on the relations of the particular facts inquired about and the extent to which the particular witness has gone in his prior answers." VIII Wigmore on Evidence, 3d Ed., Section 2276. See discussion of difference in situation between an ordinary witness and the accused on trial. Id.

█ The government showed that McCarthy was under indictment (R. 343) for certain conduct in connection with his work as paymaster for A & G; defense counsel that he had been indicted for stealing money (R. 209–211). At R. 223 McLaughlin testified that McCarthy had been using the same numbers at the same time as McLaughlin to collect additional money. The evidence showed that he plead not guilty and had been advised by his counsel as to his constitutional rights against self-incrimination. The questions which he refused to answer are shown in the Record at p. 355, 358, 364, 366, 376 and 377. In each instance the question called for an answer which in our judgment would tend to incriminate him. Counsel now argue they were unable to develop that McCarthy would be unlikely to tell Toner to stop carrying numbers when he was doing so himself. That was an argument for the jury. The witness was entitled to the protection granted him by the Fifth Amendment to the United States Constitution.[8]

█ As to the sixth reason for a new trial, after we had completed our charge and covered without objection or exception the points submitted by defense counsel, a request was made just as the case was about to go to the jury that we charge the jury "that the fact that McLaughlin pled guilty is not to be considered by the jury as any evidence whatsoever in determining whether or not Mr. Toner is guilty." The court's charge must be viewed as a whole. Boyd v. United States, 1926, 271 U.S. 104, at page 108, 46 S.Ct. 442, 70 L.Ed. 857; Wallenstein v. United States, 3 Cir., 1928, 25 F.2d 708, at page 712. "A court is free to use language of its own choice in charging a jury. And it is not error to refuse a requested charge where the general charge is reasonably complete, fairly accurate, and sufficiently covers all of the material issues in the case." United States v. Berg, 3 Cir., 1944, 144 F.2d 173, 177; United States v. Quick, 3 Cir., 1942, 128 F.2d 832; United States v. Dewinsky, D.C. N.J.1941, 41 F.Supp. 149.

█ The request must be proper. It is not the duty of the trial judge to recast or modify an erroneous or misleading requested instruction. George v. United States, 1942, 77 U.S.App.D.C. 197, 125 F. 2d 559, 563; Chastain v. United States, 5

8 "The guarantees of the Bill of Rights are the protecting bulwarks against the reach of arbitrary power * * * To pursue the protection of the Bill of Rights * * * we indulge every reasonable presumption against the waiver of fundamental rights." Glasser v. United States, 1942, 315 U.S. 60, 69, 70, 62 S.Ct. 457, 464, 86 L.Ed. 680.

Cir., 1943, 138 F.2d 413. The request was untimely. Lewis v. United States, 8 Cir., 1946, 153 F.2d 724, 726. It amounted to nothing more than an objection. Affronti v. United States, 8 Cir., 1944, 145 F.2d 3, 9.

We stated to the jury that "the fact that Mr. McLaughlin pled guilty is not evidence against Toner * * *." We could not state that it could not be considered by the jury as any evidence whatsoever in determining whether Toner was guilty. It was a fact in the record which could be considered by the jury in determining whether or not McLaughlin was an accomplice, and if so that his testimony should be considered with caution; it was a fact in connection with the intimation of defense counsel that he had not been arrested for perjury and might be attempting by his testimony to curry the favor of the government; it could be considered by the jury in passing upon the motive, interest and credibility of the witness. Were we at that time to point out those possibilities in such concentrated form we would be in our judgment unduly magnifying the importance of that fact in the minds of the jury.

We had advised the jury they were the sole judges of the facts; that merely because there was a charge made against defendant should not in itself lead to any conclusion as to defendant's guilt; that McLaughlin had plead guilty and that his "part in the indictment so far as this trial is concerned has been disposed of"; that another judge would dispose of that case; that Toner had plead not guilty; that to have a conspiracy there must be two or more persons involved;[9] and to convict the jury must find defendant was one of the conspirators; that McLaughlin as a witness was a co-defendant, and an accomplice if there was a conspiracy, otherwise not. If McLaughlin was an accomplice the jury could convict on his evidence alone "that is as to what he testified to". All the circumstances of the case must be kept in mind by the jury. The jury must determine if he was an accomplice and whether there was a conspiracy; consider McLaughlin as a witness, his interest as a defendant who had plead guilty, his credibility. At record pages 806, 807, we explained that Toner must be proven to have joined in the plans to be a co-conspirator; that McLaughlin's admissions after the conspiracy had come to an end were not evidence against Toner; the only evidence to consider was what he said in court.

Having covered all those matters we added to the jury that as jurors they were to use their common sense; that in determining guilt or innocence they had nothing to say about McLaughlin, and they would not have to return a verdict on counts as to McLaughlin.

When the additional request for charge or objection was made, we therefore added to our statement that the jury could take into consideration that one of two co-conspirators had plead guilty and make such use of it as they saw fit; that we would not define any further what they could or could not do with that kind of evidence. We concluded by stating that it was the jury's recollection that controls.

To the foregoing defense counsel made no objections and took no proper exceptions. We feel in retrospect that we should have used the word alleged when we spoke of co-conspirators; we had however previously defined what was necessary to make one a co-conspirator. Certainly the charge was on the whole fair, complete and impartial. "But in any event, there was no reversible error for want of a proper objection. Such a slip in a comparatively small matter is pre-eminently the type of thing which should have been called to the attention of the judge at once, so that he might have clarified or corrected his statement before the jury retired." United States v. Marino, 2 Cir., 1944, 141 F.2d 771, at page 773, certiorari denied 323 U.S. 719, 65 S.Ct. 48, 89 L.Ed. 578. See Boyd v. United States, supra, 271 U.S. 104 at page 108,

---

[9] See United States v. Fox, 3 Cir., 1942, 130 F.2d 56; Worthington v. United States, 7 Cir., 1933, 64 F.2d 936, at page 939. While the indictment averred the names of the defendants and other persons to the Grand Jury unknown, there was no evidence as to any other persons so that the consideration of the jury of necessity was restricted to the two defendants.

916

46 S.Ct. 442; United States v. Alfano, 3 Cir., 1945, 152 F.2d 395. "* * * Defendants take exceptions to parts of the court's charge, particularly to expression of opinion as to certain portions of the evidence. Such comments on the evidence are permissible, provided the jury understands that they are based on the court's own recollection of the testimony, and, further, that such recollection and the court's opinion of the evidence are not binding on the jury. United States v. Dilliard, 2 Cir., 101 F.2d 829, 836, certiorari denied [306 U.S. 635] 59 S.Ct. 484, 83 L.Ed. 1036." United States v. Bob et al., 2 Cir., 106 F.2d 37, at page 40, 125 A.L.R. 502, certiorari denied 308 U.S. 589, 60 S.Ct. 115, 84 L.Ed. 493. As to harmless error see Kotteakos et al. v. United States, 328 U.S. 750, 66 S.Ct. 1239, 1249, 90 L.Ed. 1557.

█ The evidence as to McLaughlin's plea was for the jury. "A plea of guilty * * * it is itself a conviction. Like a verdict of a jury it is conclusive * * * the court has nothing· to do but give judgment and sentence." Kercheval v. United States, 1927, 274 U.S. 220, 223, 47 S.Ct. 582, 583, 71 L.Ed. 1009. "* * * Admissions made in the course of judicial proceedings are substitutes for, and dispense with, the actual proof of facts." 20 Am.Juris.Evidence, Section 557.

Gordon v. United States, 6 Cir., 1947, 164 F.2d 855, 860, "While it constitutes a confession of his own guilt * * * made in open court and in the presence of the appellant. It constitutes direct and competent evidence that appellant performed the acts charged in the indictment. Valdez v. United States, 244 U.S. 432, 37 S.Ct. 725, 61 L.Ed. 1242; Nibbelink v. United States, 6 Cir., 73 F.2d 677." See Shields v. United States, 1927, 3 Cir., 17 F.2d 66, 67; in the charge there affirmed the lower court had stated, "They are self-confessed violators of the law, and the rule is that testimony of that kind must be carefully scrutinized. Upon that testimony alone you can find a verdict * * *" See Goldberg v. United States, 5 Cir., 297 F. 98, indictment for conspiracy court permitted to go out with jury though it contained pleas of other defendants. See Gandy v. State, 21 Ala. App. 384, 108 So. 656, cited in 22 C.J.S., Criminal Law, § 793, page 1344, and Commonwealth v. Dennery, 259 Pa. 223 at page 231, 102 A. 874; O'Rear v. United States, 5 Cir.,1919, 261 F. 257.

Cf. 22 C.J.S., Criminal Law, § 784, page 1333, and Id. § 769, page 1313, as to the use of the plea of one co-defendant not being permitted as against the other, citing cases, LeRoy v. Government of Canal Zone, 5 Cir., 1936, 81 F.2d 914. Also cf. United States v. Alfano, 3 Cir., 1945, 152 F.2d 395; Gambino v. United States, 3 Cir., 1939, 108 F.2d 140. There the defendant who plead was not in court and the court in error permitted his confession to be used to show his guilt of the conspiracy. See IV Wigmore, Section 1076. In O'Shaughnessy v. United States, 5 Cir., 1927, 17 F.2d 225, 227, the court was held to have exceeded the bounds of discretion in referring to the co-defendant's plea in his charge. Cf. Kosak v. United States, 3 Cir., 1931, 46 F.2d 906; United States v. Dewinsky, supra, D.C.N.J.1941, 41 F.Supp. 149.

Distinction must be made between extra judicial and judicial confessions. "The vital feature of a judicial admission is universally conceded to be its conclusiveness upon the party making it, i.e., the prohibition of any further dispute of the fact by him, and of any use of evidence to disprove or contradict it." IX Wigmore Section 2590.

From the foregoing quaere as to whether or not the evidence of the plea in open court could not be considered as evidence directly tending to prove the guilt of Toner, at all events it could be considered as evidence as above indicated. We see no merit in defendant's sixth reason.

█ As to defendant's additional reasons filed without compliance with Rule 33, we discuss them briefly in passing. All of them are without merit. See Wigmore Section 2059, p. 325 and at Section 2056, p. 321, as to the history of the right, wisely preserved in the federal courts of the trial judges to assist the jury in clarifying the evidence, provided the final decision is left in their hands.

Complaint is made because the court defined the law; told the jury to use their common sense and every day experience in reviewing the evidence; and that the court asked a witness a question. Further that the court explained the evidence to make it more intelligible to the jury. Objection is made to receipt of testimony as to the responsibility of the Devlin Company in assigning ships. On this matter the defendant testified. The testimony was clear that WSA assigned all ships.

Counsel assert error in receiving in evidence statements of the witness McLaughlin, notwithstanding that defense counsel requested that those statements be sent out with the jury. The statements were marked as government exhibits, one of them after defendant's counsel requested it. Defense counsel had developed that certain items were in the statements and that they contradicted each other; intimated that they were not the free expression of the witness on the stand; that their contents differed from what the witness had said in court.

One statement used by the government to refresh the recollection of a witness had first been submitted to defense counsel for examination; the other had not been used in court at all but was demanded by defense counsel from the government in the presence of the jury.

Finally, complaint is made as to receipt of the evidence of the auditor of the Maritime Commission and of the witness Curry, assistant superintendent of the Moore-McCormack Company. Those witnesses testified as to the meaning of "Stevedore" and "longshoremen" and as to what work and duties were those of a stevedore and of a longshoreman as contrasted with the duties of shipping, clerking and railroad companies.

 In a trial by jury in a federal court, the judge is not a mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct and of determining questions of law. Herron v. Southern Pacific Co., 283 U.S. 91, 95, 51 S.Ct. 383, 75 L.Ed. 857. In charging the jury, the trial judge is not limited to instructions of an abstract sort. It is within his province, whenever he thinks it necessary, to assist the jury in arriving at a just conclusion by explaining and commenting upon the evidence, by drawing their attention to the parts of it which he thinks important; and he may express his opinion upon the facts, provided he makes it clear to the jury that all matters of fact are submitted to their determination. Quercia v. United States, 289 U.S. 466 at page 469, 53 S.Ct. 698, 77 L.Ed. 1321. See discussion in the Quercia case, supra, from Sir Matthew Hale; United States v. Turley, 2 Cir., 1943, 135 F.2d 867; Glasser v. United States, supra, 315 U.S. at page 82, 62 S.Ct. 457. As to the right of the trial judge to ask questions, see Quercia v. United States, supra; United States v. Gross, 7 Cir., 1939, 103 F.2d 11; United States v. Breen, 2 Cir., 1938, 96 F.2d 782; Garber v. United States, 6 Cir., 1944, 145 F.2d 966, 971 et seq.

 Defense counsel (R. 229) commenced questioning the witness McLaughlin about statements made to the FBI; he brought out that the witness' first written statement differed from the second; that the witness' statement before the Grand Jury was later altered in his story to the FBI after consultation of the witness with defense counsel. Defense counsel before the jury then asked for the production of the witness' statement which had not as yet been produced or used in any manner in court, stating he wanted it to impeach the witness. He asked that it be marked as a government exhibit. Upon receipt of it he went into its contents in questioning the witness. Later he requested that it be sent out with the jury. Complaint is made that the court suggested that if the court ordered the government to produce the statement the possibility of the jury seeing the statement must also be considered.

 The matter was one for the discretion of the trial judge. The defendant's counsel had no absolute right that the statement be produced from the government's files. Goldman v. United States, 316 U.S. 129, 62 S.Ct. 993, 86 L.Ed. 1322. It is only when the witness uses the paper in court to refresh his memory while on the stand that the right exists to compel

production. Lennon v. United States, 8 Cir., 1927, 20 F.2d 490. See Morris v. United States, 5 Cir., 1906, 149 F. 123, 9 Ann.Cas. 558. There is considerable authority for the proposition that when a party at trial calls for a document from his opponent, receives it and examines it, it may later be put in evidence though otherwise incompetent. See Leonard v. Taylor, 315 Mass. 580, 53 N.E.2d 705, 151 A.L.R. 1002; cf. Wigmore, Section 762, Section 2125, p. 557, 560, citing United States v. Mitchell, Fed.Cas. No. 15, 791, 2 Wash.C.C. 478; Jordan v. Wilkins, Fed.Cas. No. 7, 526, 2 Wash.C.C. 482; Edison Electric Light Co. v. United States Electric Light Co., 2 Cir., 45 F. 55, 59; Withers v. Gillespy, 7 Serg. & R. Pa., 10, 14.

Also involved was the doctrine of completeness since part of the statement was introduced by defense counsel. See Wigmore, Section 2113; 22 C.J.S., Criminal Law, § 769, page 1316; Affronti v. United States, supra, 145 F.2d 3, at page 7.

■ A defendant in a criminal case cannot complain of error which he himself has invited. Shields v. United States, 3 Cir., 1942, 17 F.2d 66. As to impeaching witnesses, see United States v. Maggio, 3 Cir., 1942, 126 F.2d 155 and note in United States v. Michener, supra, 152 F.2d at page 885.

At all events this was a matter for the discretion of the court. The jury was instructed that the statements were not substantive evidence but were to be used only in connection with the determination of the credibility of the witness.

As to the testimony concerning the prior conduct admitted to show knowledge, see Gordon v. United States, supra; Heike v. United States, 227 U.S. 131, 145, 33 S.Ct. 226, 57 L.Ed. 450, Ann.Cas. 1914C, 128; Orloff v. United States, 6 Cir., 1946, 153 F.2d 292; Glasser v. United States, supra, 315 U.S. 60, at page 81, 62 S.Ct. 457; United States v. Uram, 2 Cir., 1945, 148 F.2d 187; Blodgett v. United States, 8 Cir., 1947, 161 F.2d 47.

■ As to the witnesses Shea and Curry, see Norton v. Warner Co., 321 U.S.

565, 570, 64 S.Ct. 747, 88 L.Ed. 430; Delaware & Chesapeake Steam Towboat Co. v. Starrs, 69 Pa. 36, at page 41; Corbin v. Haws Refractories Co., 277 Pa. 126, 131, 120 A. 811; Henry Pennsylvania Trial Evidence, 3d Ed., Section 332, 335, 336; Eustis Packing Co. v. Martin, 5 Cir., 1941, 122 F.2d 648; Chicago Great Western Ry. Co. v. Beecher, 8 Cir., 1945, 150 F.2d 394, 400, certiorari denied 326 U.S. 781, 66 S. Ct. 339, 90 L.Ed. 473; Phillips Petroleum Co. v. Payne Oil Corp., 10 Cir., 1944, 146 F.2d 546, 547. "A witness possessed of special training, experience, or observation in respect to the matter under investigation may testify as to his opinion when it will tend to aid the jury in reaching a correct conclusion, and where a written contract contains words or expressions of a technical nature employed in a particular business or industry, persons familiar with such business or industry may testify as to whether the words or expressions used have acquired a well-recognized meaning among those engaged in such business or industry, and if so, what it is, for the purpose of aiding the court." See also Moran v. Prather, 23 Wall. 492, 499, 90 U. S. 492, 499, 23 L.Ed. 121; Daniel v. Pappas, 8 Cir., 1926, 16 F.2d 880; American Agricultural Chemical Co. v. Moore, D.C., 17 F.2d 196, 198.

As to liberality in the receipt of evidence and qualifications of witnesses, see Rule 43, Federal Rules of Civil Procedure, 28 U.S. C.A. following Section 723c. There is no situation here like that presented in United States v. Michener, 3 Cir., 1945, 152 F.2d 880.

One must guard against the magnification of instances which were of little importance in their setting. Cf. Glasser v. United States, supra 315 U.S. at page 83, 62 S.Ct. 457. See United States v. Breen, supra 98 F.2d at page 784.

For the foregoing reasons we conclude there was no error in the conduct of the trial; that the defendant was properly convicted. On this date orders will be made denying defendant's motions for judgment of acquittal and for a new trial.